Steve ADAMS, Gail Thomas, and
Vincent Thomas, Plaintiffs,

v.

TOWN OF BURRILLVILLE, through
its Finance Director, John P. MAIN-
VILLE, Michael C. Wood, individual-
ly, and as an employee of the Town of
Burrillville, and John P. Mainville, in-
dividually, and as an employee of the
Town of Burrillville, Defendants.

No. 01–463S.

United States District Court,
D. Rhode Island.

March 3, 2003.

Elizabeth P. Fecteau, Esq., Jeffrey D. Sowa, Brian LaPlante, Carrara, LaPlante, Dayian & Sowa, LLP, Providence, RI, for plaintiff.

Marc DeSisto, DeSisto Law, Providence, RI, for defendant.

### DECISION AND ORDER

SMITH, District Judge.

Plaintiff Steve Adams ("Adams") is a police officer employed by Burrillville, Rhode Island (the "Town" or "Burrillville"). Plaintiff Gail Thomas ("Thomas") is Mr. Adams' common-law wife, and Plaintiff Vincent Thomas is the child of Mr. Adams and Ms. Thomas.

Plaintiffs brought this action against the Town and two of its managerial employees after the Town declined to provide health insurance for Thomas and their son. The Complaint sets forth counts of breach of contract (Count I), tortious interference with contractual relations (Count II), negligence (Count III), intentional infliction of emotional distress (Count IV), and constitutional deprivation violations brought pursuant to 42 U.S.C. § 1983 (Counts V VII). While the vast majority of Plaintiffs' claims are grounded in state law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 due to the constitutional deprivation claims brought pursuant to § 1983.

This matter is now before the Court on Defendants' Motion for Summary Judgment with respect to all of the counts alleged in the Plaintiffs' Complaint. The Town argues that it is entitled to summary judgment on four different grounds. First, that a Collective Bargaining Agreement ("CBA") between the Town and the Police Union provides Plaintiffs with their exclusive remedy; second, that Plaintiffs' claims for emotional distress, negligence, and constitutional deprivation violations under 42 U.S.C. § 1983 are time-barred; third, that Plaintiffs' emotional distress claims fail to meet the requirements set

forth by Rhode Island law; and, fourth, the due process claims fail because the Plaintiffs do not have a constitutionally protected property interest in the terms of the CBA. The Plaintiffs dispute these arguments.

The Court heard oral arguments on these issues on January 21, 2003, and took the motion under advisement. For all of the reasons set forth below, the Defendants' Motion for Summary Judgment is granted.

## I. Factual and Procedural Background

The following facts are essentially undisputed by the parties. On or about March 23, 1998, Burrillville hired Adams as a probationary police officer. As part of the labor contract between the Town and the Burrillville Police Department (the "CBA"), Adams was entitled "to receive Full Family Coverage ... by Blue Cross of Rhode Island or other similar health care provider...." At that time, Adams completed an application for health insurance. On his application, Adams listed Thomas and their son, Vincent, as dependents, but failed to indicate his marital status as "married"; instead he checked off the "single" box.

At that time, Adams and Thomas had a "common-law marriage."[1] On or about April 1, 1998, Defendant John Mainville, Burrillville's Finance Director, informed Adams by letter that Thomas and their son would not be covered under the health plan. As a result, Thomas obtained health insurance from JC Penney, her own employer, at the cost of approximately $3,000.00 per year. Adams alleges that Thomas had preexisting medical conditions that were exacerbated due to her having to work and her inability to seek medical treatment. However, Plaintiffs have presented no evidence to that effect.[2]

In August of 1999, with the help of his sergeant, Adams convinced Burrillville to provide coverage for Thomas and his son. However, for reasons that are unexplained and difficult to understand, the Plaintiffs did not complete and return to the Defendants the necessary paperwork until February of 2000. Due to this delay in delivering the proper paperwork, the Plaintiffs were not provided coverage until March of 2000.

Adams never filed a formal grievance nor did he seek additional relief as set forth in the CBA. Instead, Plaintiffs filed the instant complaint against the Town of Burrillville and its employees.

## II. Summary Judgment Standard

■ Summary judgment's role in civil litigation is "to pierce the pleadings to assess the proof in order to see whether there is a genuine need for a trial." *De-Jesus–Adorno v. Browning Ferris Indus. of Puerto Rico, Inc.,* 160 F.3d 839, 841 (1st Cir.1998) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When a motion for sum-

1. Black's Law Dictionary defines "common-law marriage" as "one not solemnized in the ordinary way (*i.e.* non-ceremonial) but created by an agreement to marry, followed by cohabitation. Common-law marriage is recognized by Rhode Island law." *See* R.I. Gen. Laws § 5–3–15. *See also Holgate v. United*

*Elec. Rys. Co.,* 47 R.I. 337, 133 A. 243 (R.I. 1926).

2. For purposes of the present motion this allegation can be taken as true. While in dispute, this fact is not material.

mary judgment is directed against a party that bears the burden of proof, the movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If that showing is made, the nonmovant, then, bears the burden of producing definite, competent evidence to rebut the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). In other words, the nonmovant is required to establish that it has sufficient evidence to enable a jury to find in its favor. *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997).

## III. *Discussion*

### A. *CBA as the Exclusive Remedy*

■ The Town's initial argument is that because the Plaintiffs failed to take advantage of the grievance procedure outlined in the CBA, they are barred from pursuing damages through this action. In support of this contention, the Defendants refer to a long line of labor cases, which hold that an employee subject to a CBA must exhaust the CBA's procedural remedies prior to bringing an action in court. *Hussey v. Quebecor Printing Providence, Inc.,* 2 F.Supp.2d 217, 222 (D.R.I.1998); *Mikaelian v. Drug Abuse Unit,* 501 A.2d 721, 725–26 (R.I.1985); *Ritacco v. Brown & Sharpe Mfg. Co.,* 96 R.I. 302, 191 A.2d 158, 160 (1963). However, while this basic premise is sound, the CBA in this case, by its terms, did not cover Adams while he was a probationary police officer. Section 2.5.1.3 of the CBA states "[o]nly Police Officers who have successfully completed their probationary period shall be subject to the grievance and arbitration procedure as provided in Article VI of this agreement." Therefore, because the grievance and arbitration procedures were not administrative remedies available to Adams, he cannot be faulted for failing to exhaust them. The Defendants cannot maintain that Adams forfeited any right to bring this action by not filing a grievance under the CBA.

### B. *Statute of Limitations*

■ The Town next argues that the Plaintiffs' claims for emotional distress, negligence, and due process violations brought under § 1983, are time-barred. Under Rhode Island law, the statute of limitations for personal injury actions is three years. R.I. Gen. Laws § 9–1–14(b). Plaintiffs' tort claims are clearly subject to this statute. In addition, Plaintiffs' constitutional deprivation claims are also subject to a three year statute of limitations because § 1983 claims are subject to the state statute of limitations for personal injury actions, which in this case is three years under § 9–1–14(b). *Wilson v. Garcia,* 471 U.S. 261, 279–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Tang v. State of R.I., Dept. of Elderly Affairs,* 904 F.Supp. 55, 61 (D.R.I.1995)(citing *Morris v. Gov't. Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994)).

In this case, the Plaintiffs' injuries all emanate from the Town's denial of their health benefits. The Town denied the Plaintiffs' health benefits on or about April 1, 1998. The statute of limitations therefore began to run as of that date. However, the Plaintiffs did not file their Complaint until September 25, 2001, nearly six months after the statute of limitations had expired.

The Plaintiffs' attempt to escape from this fatal application of the statute of limi-

tations by claiming that the alleged violation in this case was of a "continuing" nature. In support of their argument, Plaintiffs argue that while the Town's alleged misconduct indeed began in April of 1998, the misconduct continued until September of 1999 when the Town finally agreed to provide health benefits. This Court is not persuaded by the Plaintiffs' attempt to bootstrap themselves within the statute of limitations. Rhode Island has not fully recognized the continuing violation doctrine in the tort context. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 39 (1st Cir.2000)(indicating the lack of Rhode Island precedent addressing continuing violations in the tort context). Even if Rhode Island law was settled in this area, however, the application of the continuing violation doctrine is not unlimited. Courts have routinely differentiated between conduct that is continuing in nature, and the injurious *consequences* of conduct that occurred in the past. *See, e.g., Muniz–Rivera v. U.S.*, 204 F.Supp.2d 305, 315 (D.P.R.2002)(stressing the distinction between a continuing act and a single act that results in continuing consequences). Here, Plaintiffs clearly knew of their injuries when they received the April 1, 1998 letter denying health insurance coverage for Thomas and their son. While the Plaintiffs may have continued to suffer after that point as a result of the denial—by incurring expenses for procedures not covered by insurance, or foregoing such procedures—those effects were consequences of the original denial of coverage, and not additional violations. Therefore, Plaintiffs' claims for intentional infliction of emotional distress, negligence, and due process violations brought under 42 U.S.C. § 1983 are time-barred.

## C. *Intentional Infliction of Emotional Distress Claims*

■ The Town further argues that even if the Plaintiffs' claims for intentional infliction of emotional distress are not time-barred, the claims still must be dismissed because they fail to establish a viable emotional distress claim under Rhode Island law. While this claim is barred as untimely, the Court will address this asserted defense as well.

■ In order to maintain an action for intentional infliction of emotional distress under Rhode Island law, a plaintiff must establish the following elements: (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I.1984). In addition, the Rhode Island Supreme Court has determined that plaintiffs attempting to maintain emotional distress claims must also provide some proof of medically established physical symptomatology. *Vallinoto v. DiSandro*, 688 A.2d 830, 838–40 (R.I.1997).

In this case, the Plaintiffs' emotional distress claims fail for two reasons. First, Plaintiffs' allegations simply do not rise to the level of "extreme and outrageous" conduct. This standard has been described as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency … and utterly intolerable in a civilized community." *Swerdlick v. Koch*, 721 A.2d 849, 863 (R.I.1998)(quoting Restatement (Second) Torts (1965) § 46, cmt. d). Here, Plaintiffs allege that the Defendants' decision to place them in a position without Town health benefits was "extreme and outrageous" as a matter of law. The Plaintiffs provide no authority in support of this proposition, nor has this Court been able

to find any such support. Plaintiffs' claim falls far short of the extreme conduct required to support a claim of intentional infliction of emotional distress.

Second, the Plaintiffs have failed to provide any evidence of alleged physical symptomatology as a result of the Town's conduct. At oral argument, Plaintiffs' counsel referred the Court to the Complaint for proof of the Plaintiffs' alleged physical symptomatology. Complaint at ¶¶ 58 and 62 (Plaintiffs alleged to have suffered "physical injury, physical discomfort ... and other damages ...""). However, this blanket reference to the Complaint at this stage in the litigation is plainly insufficient. In order to state a claim, the Plaintiffs are required to connect *with evidence* the alleged emotional distress and the alleged physical manifestations thereof.[3] *See Vallinoto*, 688 A.2d at 839. The Plaintiffs have not met this burden. Therefore, summary judgment is appropriate as to Plaintiffs' claims for intentional infliction of emotional distress.

### D. *Due Process Claims Under 42 U.S.C. § 1983*

The Town also claims that, in addition to the fact that the Plaintiffs' due process claims are time-barred, the Complaint fails to state a § 1983 claim for an alleged violation of their procedural and substantive due process rights.

■ The initial step in procedural or substantive due process analysis is a determination that a constitutionally protected interest is at stake. *Washington Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). Property interests are

determined "by existing rules or understandings that stem from an independent source such as state law." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

It is unclear whether the Plaintiffs' stake in the health benefits provided under the CBA rises to the level of a constitutionally protected property interest. The First Circuit has repeatedly held that not every contractual violation constitutes a deprivation of property without due process. *See, e.g., Moody v. Town of Weymouth*, 805 F.2d 30, 33–34 (1st Cir. 1986)(court hesitant to turn withholding of police officer's retirement benefits into a constitutional case). While it is clear that contracts do provide a constitutionally protected property interest "when the contract confers a special status such as employment or an entitlement to welfare payments," *Wehran–Puerto Rico, Inc. v. Municipality of Arecibo*, 106 F.Supp.2d 276, 287 (D.P.R.2000), it is unclear in this circuit whether such protection extends to health benefits available pursuant to a CBA. This Court declines to reach the merits of this issue because the claim is barred by the three year statute of limitations.

### E. *Plaintiffs' Remaining State Law Contract Related Claims*

■ Since this Court has determined that summary judgment is appropriate with respect to the Plaintiffs' § 1983 claim—their only federal claim—it has discretion to decide whether to retain supplemental jurisdiction over the remaining con-

---

**3.** At oral argument, Plaintiffs' counsel indicated that attempts had been made to contact an expert witness regarding the Plaintiffs' physical ailments, but counsel has been unable to either secure the expert, or connect the alleged wrongful conduct to any physical symptomatology. The mere possibility of expert testimony sometime in the future does not save the Plaintiffs' claim. Plaintiffs failed to provide any affidavits, depositions, or other evidentiary support to establish a causal connection to any physical symptomatology. Plaintiffs could have filed a motion under Fed.R.Civ.P. 56(f) for extra time to file an opposition to the Defendants' Motion for Summary Judgment, but chose not to do so.

tract-related claims. 28 U.S.C. § 1367(c). In most instances, dismissal of a plaintiff's federal claim at an early stage of a lawsuit triggers dismissal of any supplemental state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218(1966); *Flowers v. Firoe,* 239 F.Supp.2d 173, 178 (D.R.I. 2003). In this case, there is no reason to depart from the general rule warranting such a dismissal. Accordingly, this Court declines to address the Motion for Summary Judgment with respect to the contract-related claims and orders those claims dismissed without prejudice.

### IV. *Conclusion*

For the reasons set forth above, the Defendants' Motion for Summary Judgment on Counts III, IV, V, VI, and VII is GRANTED. The Court declines to maintain supplemental jurisdiction over Counts I and II. Counts I and II are dismissed without prejudice.

IT IS SO ORDERED,