Mary D. CROCE

v.

STATE of Rhode Island, OFFICE OF
ADJUTANT GENERAL et al.

No. 2002–459–Appeal.

Supreme Court of Rhode Island.

Sept. 1, 2005.

Lewis J. Paras, for Plaintiff.

Brenda D. Baum, for Defendants.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

PER CURIAM.

In this age discrimination case, the plaintiff, Mary D. Croce, appeals from the Superior Court's grant of summary judgment in favor of the defendants (viz., "the State of Rhode Island, Office of Adjutant General" and "Major General Reginald Centracchio [as] Adjutant General"). The plaintiff contends that the Superior Court erred in granting summary judgment on statute of limitations grounds because (1) there was an allegedly continuing pattern of discriminatory conduct and (2) at least one of the allegedly discriminatory acts purportedly took place within the statute of limitations.

This case came before the Supreme Court for oral argument on February 1, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be summarily decided.

### Facts and Travel

On September 15, 1995, when plaintiff was seventy-two years old, she was notified that she was to be laid off from her position as a fiscal clerk for the State of Rhode Island, Office of Adjutant General.

To avoid being laid off, plaintiff exercised her contractual right to "bump" into another (albeit lower paying) position within the same department in the Adjutant General's office.

The plaintiff contends that a series of events that occurred after she assumed her new position constituted a continuing pattern of discriminatory conduct that related back to the layoff notice that she had received in September of 1995. According to plaintiff, from October 1995 to February 14, 1996, she performed the same duties in her new position as she had performed when she was a fiscal clerk, but she was compensated at a lower pay rate. She also alleges that it was necessary for her to climb stairs due to the fact that she was relocated to a fourth-floor office in a building that did not have an elevator. The plaintiff further points out that, on August 1, 1996, she was transferred to Camp Fogarty in East Greenwich, which transfer required her to undertake a thirty-mile roundtrip daily commute. The plaintiff also alleges that, in March of 2000, she was not given a pay upgrade when the younger clerks in her department received one and that, when her coworkers received new computers, she received only an old computer, which was not installed. She further says that her coworkers were offered computer training, but that she did not receive any such offer.

The plaintiff commenced the instant action by filing a complaint on December 22, 1998 (the original complaint).[1] Count 1 of that complaint was brought under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

Count 2 alleged that plaintiff was a victim of age discrimination in violation of the Rhode Island Civil Rights Act of 1990 (RICRA). *See* G.L. 1956 chapter 112 of title 42. Count 3 contained an equal protection claim brought pursuant to the Rhode Island Constitution.

On April 5, 2000, a motion justice granted the state's motion to dismiss with respect to counts 1 and 3 of the original complaint. In October 2000, the state moved for summary judgment on count 2 of the original complaint.

On November 21, 2000 plaintiff's motion to amend her complaint was granted. In her amended complaint, plaintiff added Major General Reginald Centracchio in his official capacity as a defendant, and she asserted an additional claim of age discrimination under the State Fair Employment Practices Act (FEPA). *See* G.L. 1956 chapter 5 of title 28.

On January 23, 2001, a justice of the Superior Court conducted a hearing on the state's motion for summary judgment. The motion justice found that none of the events alleged to have occurred after plaintiff received her layoff notice was facially discriminatory. She then granted summary judgment in favor of the state with respect to the RICRA claim on the grounds that the claim was barred by the statute of limitations.[2]

Thereafter, defendants filed another motion for summary judgment with respect to the RICRA claim against Major General Centracchio and with respect to the FEPA claims against both defendants.

---

1. The plaintiff originally named only "the State of Rhode Island, Office of Adjutant General" as defendant. She later amended her complaint, however, to add Major General Reginald Centracchio, in his capacity as Adjutant General, as a named defendant.

2. The Superior Court did not address the FEPA claim at that time because it was added after the state had filed its motion for summary judgment; and, therefore, the state did not present any argument concerning this issue at the hearing on January 23, 2001.

In support of their motion for summary judgment, defendants submitted an affidavit indicating that plaintiff's entire unit had been transferred to Camp Fogarty to accommodate the space needs of the department.[3] On the issue of plaintiff's performance of her former duties, defendants pointed out that, once it was learned that plaintiff had been continuing to perform her old duties, those duties were reassigned. The defendants also indicated that plaintiff had admitted in her deposition testimony that her pursuit of a pay upgrade was not related to an increase in job duties or responsibility, but rather was centered on her wanting to get her old job back. With respect to computer usage, defendants pointed out that plaintiff had further admitted in her deposition testimony that she had no problem finishing her work or having to share a computer with another employee and that having the use of a computer for one or two hours a day was sufficient. The defendants further indicated that plaintiff had received a new computer and had been given computer training before she filed the amended complaint.

On June 21, 2002, a motion justice granted defendants' motion for summary judgment in its entirety. Judgment was entered on July 2, 2002, and plaintiff timely appealed.[4]

The plaintiff raises only one issue on appeal—namely, the appropriateness of the Superior Court's having granted summary judgment on statute of limitations grounds with respect to her FEPA and RICRA claims.

## Analysis

■ When we review the granting of summary judgment by the Superior Court, we do so on a *de novo* basis. *Kells v. Town of Lincoln,* 874 A.2d 204, 209 (R.I. 2005). In conducting that review, we adhere to the same criteria as did the motion justice in the Superior Court. *O'Sullivan v. Rhode Island Hospital,* 874 A.2d 179, 182 (R.I.2005). We will affirm the granting of summary judgment "only if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Tanner v. Town Council of East Greenwich,* 880 A.2d 784, 791 (R.I.2005); *see also O'Sullivan,* 874 A.2d at 182. At the same time, the party opposed to a motion for summary judgment has "the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I. 1996).

■ The plaintiff asserts that the motion justice erred in granting summary judgment in favor of defendants. She asserts that her case was not time-barred because there was a pattern of continuing discriminatory acts and that at least one of those discriminatory acts occurred within statute of limitations period.[5]

---

3. In her deposition testimony, plaintiff acknowledged that her entire office, which was composed of several employees, was transferred to Camp Fogarty at the same time as she was.

4. The judgment of July 2, 2002, from which plaintiff has appealed, expressly states that it was "entered in accordance with the Decision rendered on June 21, 2002 * * *."

5. It is a basic principle in discrimination law that the "[p]laintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period." *Muniz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994).

The FEPA contains a one year statute of limitations. Section 28–5–17(a). *See Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673 (R.I.1980); *Ferguson Perforating and Wire Co. v. Rhode Island Commission for Human Rights,* 415 A.2d 1055 (R.I.1980).

■ However, with respect to the RI-CRA, we have never had occasion to hold what limitations period is applicable. In the case of *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 70 (1st Cir.2004), the United States Court of Appeals for the First Circuit addressed the issue and held that "RICRA actions are governed by Rhode Island's three-year residual statute of limitations for injuries to the person, namely, R.I. Gen. Laws § 9–1–14(b)." [6] Although the question of what statute of limitations applies to RICRA actions is one of obvious importance to bench and bar, it has not been briefed by the parties to this case and we will not pass upon this issue without thorough briefing and argument. Therefore, since it will not affect the result in this particular instance, for the purposes of this case, we have assumed the applicability of the three-year statute of limitations, which the First Circuit concluded in *Rathbun* is the proper limitations period for RICRA claims.

It is clear that the allegedly discriminatory act which lies at the core of plaintiff's case occurred, if at all, more than three years before plaintiff filed the complaint.

■ The layoff of September 1995 constituted a discrete act. The limitations period began to run at that time, and plaintiff has failed to show why the continuing violation exception should be available to her in this case. *See Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979) ("A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination."); *see also Gilbert v. City of Cambridge,* 932 F.2d 51, 58–59 (1st Cir.1991) (distinguishing "between a continuing act and a singular act that brings continuing consequences in its roiled wake."); *Altair Corp. v. Pesquera de Busquets,* 769 F.2d 30, 32 (1st Cir.1985) ("[Plaintiff's] argument concerning the continuing violation exception to the general rule confuses a continuing act with a single act that has continuing consequences."); *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 979 (5th Cir.1983) ("[A plaintiff] may not employ the continuing violation theory 'to resurrect claims about discrimination concluded in the past, even though its effects persist.' "); *Adams v. Town of Burrillville,* 249 F.Supp.2d 151, 154–55 (D.R.I.2003); *Fricker v. Town of Foster,* 596 F.Supp. 1353, 1359 (D.R.I. 1984); *see generally Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).[7]

---

6. After acknowledging that this Court has not spoken on the subject of RICRA's limitations period, the First Circuit in Rathbun engaged in an extended analysis in an attempt to determine what rule this Court most likely would adopt with respect to that subject. *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 66–70 (1st. Cir.2004).

While the First Circuit in *Rathbun* certainly presents cogent arguments in support of its conclusion, we should note that the First Circuit in that case reversed a tightly reasoned opinion by the United States District Court for the District of Rhode Island, which held that the limitations period for RICRA claims should be one year. *Rathbun v. Autozone, Inc.,* 253 F.Supp.2d 226 (D.R.I.2003). As we have indicated, in the case at bar we need not and do not pass upon this difficult statute of limitations issue.

7. It is widely recognized that statutes of limitations are "designed to keep stale claims out of court." *Muniz–Cabrero,* 23 F.3d at 611 n.

This case has distinct similarities with the First Circuit case of *Jensen v. Frank,* 912 F.2d 517 (1st Cir.1990). The court there stated:

> "It is beside the point that [plaintiff] continued to feel the effects of the firing in 1984 and beyond. In general, Title VII's temporal restrictions are measured from the occurrence of a triggering event; that the event's sequelae linger does not coterminously extend the limitation period. In the rather modest garden where continuing violation jurisprudence may lawfully flourish, courts must be careful to differentiate between discriminatory acts and the ongoing injuries which are the natural, if bitter, fruit of such acts." *Id.* at 523.

In *Jensen,* Circuit Judge Selya described at some length what a continuing violation is. He noted that there are two types of continuing violation—(1) a *serial violation,* which is "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong" *id.* at 522; [8] and (2) a *systemic violation,* which relates to a continuing "discriminatory policy or practice," *id.* at 523. The layoff of September 1995 was a one-time event and therefore does not fall within the parameters of a serial violation. And neither can one perceive in the record evidence of a "discriminatory policy or practice," as is required for there to be a systemic violation. It is clear to us that the layoff does not fall into either category. It was a one-time administrative act—not an act that was repeated over and over, and it was not the product of a discriminatory policy or practice.

In our judgment, the layoff of September 1995 was no longer actionable when the original complaint was filed in December of 1998. By that point, the statutes of limitations pertaining to the allegedly discriminatory nature of the layoff had forever run—and the "continuing violation" exception may not properly be invoked by one who claims to have been wronged by a one-time business decision such as a layoff.

 The other acts to which plaintiff points (e.g., the fact that she and the other members of her office were required to move from Providence to Camp Fogarty in East Greenwich) [9] bear no indicia of discriminatory animus.[10]

6; *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Delaware State College v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

8. As an example of a serial violation, Judge Selya refers to an employee who is "passed over several times for promotion, based on the same (actionable) animus." *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990). Each act of discriminatory passing over the employee would be separately actionable unless barred by the pertinent statute of limitations.

9. The plaintiff's claim relative to the fact that her office unit was required to move from their former location in Providence to Camp Fogarty in East Greenwich may be revelatory of plaintiff's misunderstanding of what the antidiscrimination statutes are meant to address. Employers (including governmental employers) sometimes make decisions that cause inconvenience or discomfort for employees, but those decisions are actionable only if plaintiff can establish that they were motivated by a discriminatory animus.

The First Circuit well expressed this concept when it said: "Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir.1991); *see also Sullivan v. Liberty Mutual Insurance Co.,* 444 Mass. 34, 825 N.E.2d 522, 541–42 (2005).

10. We have reviewed the materials submitted in support of the defendants' motion for summary judgment, and we believe that the motion justice correctly granted summary

We emphasize that, even if plaintiff's claims concerning the various purported acts of discrimination that plaintiff alleges occurred within the statute of limitations were not properly dismissed pursuant to a Super.R.Civ.P. 56 motion (and we have held that they were), they still would not have served to revivify plaintiff's claim with respect to the September 1995 layoff. That claim ceased to be actionable no later than three years after the layoff—whereas plaintiff did not commence her legal action until December of 1998.

### Conclusion

In view of the plaintiff's failure to have established a basis for the application of the "continuing violation" concept, we hold that the pertinent statutes of limitations control and that this action is time-barred to the extent that it relates to the layoff of September 1995; and we also hold that the non-time-barred counts alleging other discriminatory acts were properly dismissed by summary judgment.

Accordingly, we affirm the judgment of the Superior Court. The record may be returned to that court.

judgment with respect to the other allegedly discriminatory acts.