June 20, 2019

**Supreme Court**

No. 2018-91-Appeal.
(PC 16-3609)

Jason Boudreau                    :

v.                    :

Automatic Temperature Controls, Inc. et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jason Boudreau            :

v.                  :

Automatic Temperature Controls, Inc. et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** The *pro se* plaintiff, Jason Boudreau, appeals from a Superior Court judgment granting summary judgment in favor of the defendants, Automatic Temperature Controls, Inc. (ATC), Golden Plains Software, LLC, and Russell Turner.[1] This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing argument and examining the memoranda filed by and on behalf of the parties, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] The plaintiff filed a stipulation with this Court in which he agreed to dismiss his appeal against Golden Plains Software, LLC and Russell Turner. Accordingly, only plaintiff's appeal with respect to his claims against ATC is before us.

**Facts and Travel**

The plaintiff was employed by ATC from September 2009 until June 2011. Shortly before plaintiff's employment was terminated, Steve Sorel, ATC's information technology manager, at the behest of Steve Lussier, ATC's president, installed a software program called System Surveillance Pro (SSP) on plaintiff's work computer.[2] SSP was able to capture intermittent pictures, or "screenshots," of the content displayed on plaintiff's computer screen, which were saved to the computer's hard drive and sent to a remote email address that had been created and managed by Sorel. The information obtained from plaintiff's work computer through SSP was disclosed to the Warwick Police Department. This disclosure in turn led to plaintiff's arrest and eventual conviction for possession of child pornography.

After he was discharged by ATC, plaintiff filed a claim for unemployment benefits. ATC contested that claim and, on January 24, 2012, a hearing was held on the matter before a hearing officer at the Rhode Island Department of Labor and Training Board of Review. At that hearing, with plaintiff present, Lussier testified that ATC had installed the tracking software on plaintiff's work computer. Lussier further explained that, "[e]very time [plaintiff] clicked on a website, sent an e-mail, [or] opened a program," a record of the action was logged and emailed to Lussier and Sorel.

In 2013 plaintiff filed a lawsuit against Lussier, Sorel, and others in the United States District Court for the District of Rhode Island. *See Boudreau v. Lussier*, 2015 WL 7720503

---

[2] ATC alleges in its brief to this Court that SSP was installed on the work computer because, some time in June 2011, plaintiff asked Sorel to restore electronic mail files to the computer's hard drive. According to ATC, that process produced a list of "recoverable" files that previously had been deleted from the work computer, which included what ultimately were determined to be numerous child pornographic video and picture files.

(D.R.I. Nov. 30, 2015). In that case, plaintiff alleged that Sorel and Lussier had violated the Electronic Communications Privacy Act when they installed SSP on the work computer.[3] *See id.* at *5. When he was deposed during the course of that litigation, plaintiff testified that he was not aware that ATC had installed any tracking software on his computer "until January 24[, 2012] when Steve Lussier testified that that's what was on the computer." The District Court granted summary judgment in favor of the defendants,[4] and the United States Court of Appeals for the First Circuit affirmed that decision. *See Boudreau v. Lussier*, 901 F.3d 65, 76, 77, 78 (1st Cir. 2018).

In August 2016, plaintiff filed another lawsuit, this time in the Superior Court. It is that lawsuit that is the subject of this appeal. In his complaint, plaintiff alleged various claims under the Rhode Island Wiretap Act, the Rhode Island Computer Crime Act, the Rhode Island Software Fraud Act, and state privacy laws, as well as claims for negligence, fraudulent concealment, products liability, civil liability for crimes and offenses, and various federal law claims. The case was removed to the District Court, where ATC filed a motion to dismiss plaintiff's complaint. The District Court dismissed plaintiff's federal claims pursuant to the relevant statute of limitations and remanded the remainder of the case to the Superior Court to determine ATC's motion to dismiss with respect to plaintiff's state law claims. In November 2017, a justice of the Superior Court heard the arguments of the parties on ATC's motion to dismiss. ATC argued that G.L. 1956 § 9-1-14(b), which provides for a limit of three years from

---

[3] Specifically, plaintiff alleged a violation of 18 U.S.C. § 2511(1)(a) of the Electronic Communications Privacy Act (ECPA), which occurs when a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]"

[4] With respect to the ECPA claim, the District Court granted summary judgment on the grounds that the captured screenshots on plaintiff's work computer were insufficient to show a contemporaneous interception of plaintiff's communications as required to establish a violation under the ECPA. *See Boudreau v. Lussier*, 901 F.3d 65, 76 (1st Cir. 2018).

the date of an injury to a person to file an action, was the applicable statute of limitations. ATC further argued that any injury that plaintiff was alleged to have suffered occurred in June 2011 but that plaintiff did not file his complaint until August 2016, rendering his claims time barred. Moreover, ATC contended that, even if the discovery rule applied to this case, plaintiff's claims were nonetheless time barred because plaintiff was aware, or, as a matter of law objectively should have been aware, of his claims at his unemployment hearing in January 2012. Finally, ATC argued that the statute of limitations could not be tolled by fraudulent concealment because there had been no express misrepresentation by ATC.

Significantly, at the request of plaintiff, the court converted the motion to dismiss into a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure, because both parties had referred to matters outside of the pleadings. The hearing justice assumed, *arguendo*, that the discovery rule applied, but he concluded nevertheless that plaintiff had "more than sufficient knowledge of what transpired relative to the surveillance of his computer activities by the end of January 2012 to place a reasonable person in his place on notice of any potential claim" he might have had against ATC.

In coming to that conclusion, the hearing justice found that in June 2011 ATC installed software on plaintiff's work computer without his knowledge that intercepted plaintiff's emails and online activities. However, the hearing justice also found that the intercepted information was disclosed to the Warwick Police Department in June 2011, leading to plaintiff's arrest and ultimate conviction, and also was disclosed during plaintiff's unemployment hearing in January 2012. Moreover, the hearing justice noted that, in 2013, plaintiff was in possession of enough information to file his complaint in the District Court that outlined his injuries; and the hearing justice found it "both curious and revealing" that, in the case now before us, plaintiff amended

- 4 -

his complaint to delete a factual allegation that ATC had disclosed the contents of plaintiff's intercepted communications during the unemployment hearing. Finally, the hearing justice said that there was no evidence that ATC had fraudulently concealed anything from plaintiff. Accordingly, the hearing justice granted summary judgment in favor of defendants. Final judgment was entered on November 27, 2017. The plaintiff timely appealed to this Court.[5]

## II

## Standard of Review

This Court reviews a decision granting a party's motion for summary judgment *de novo*. *DeLong v. Rhode Island Sports Center, Inc.*, 182 A.3d 1129, 1134 (R.I. 2018). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, 'we view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment.'" *Sullo v. Greenberg*, 68 A.3d 404, 406-07 (R.I. 2013) (brackets omitted) (quoting *Sacco v. Cranston School Department*, 53 A.3d 147, 150 (R.I. 2012)). "Although summary judgment is recognized as an extreme remedy, * * * to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that 'proves the existence of a disputed issue of material fact.'" *Id.* at 407 (internal citation and brackets omitted) (quoting *Mutual Development Corporation v. Ward Fisher & Company, LLP*, 47 A.3d 319, 323 (R.I. 2012)).

---

[5] The plaintiff filed his notice of appeal on November 10, 2017, before judgment had been entered. This Court has previously stated that "in cases in which an appeal has been prematurely filed, we will treat the appeal as if it had been timely filed after judgment was entered." *Sullivan v. Coventry Municipal Employees' Retirement Plan*, 203 A.3d 483, 486 n.4 (R.I. 2019) (brackets omitted) (quoting *Arnold Road Realty Associates, LLC v. Tiogue Fire District*, 873 A.2d 119, 125 n.4 (R.I. 2005)).

# III

## Discussion

On appeal, plaintiff urges upon this Court that the hearing justice erred when he ruled that the claims set forth in plaintiff's complaint were barred by the three-year statute of limitations set forth in G.L. 1956 § 9-1-14(b). The plaintiff argues that the discovery rule should apply to his claims under the Rhode Island Computer Crime Act and the Software Fraud Act (the computer crime claims). The plaintiff also maintains that the hearing justice erred when he found that there was no evidence indicating that ATC had fraudulently concealed the conduct that forms the basis of plaintiff's computer crime claims. Further, plaintiff contends that the continuing violation doctrine should apply to his claims under the Rhode Island Wiretap Act.

## A

## The Discovery Rule

The plaintiff argues that the hearing justice erred in finding that plaintiff was aware of his state computer crime claims[6] in June 2011, and that "at least by the end of January 2012, the

---

[6] The plaintiff alleges violations under G.L. 1956 §§ 11-52-3 and 11-52-4.1 of the Rhode Island Computer Crime Act, and G.L. 1956 § 11-52.2-2 of the Rhode Island Software Fraud Act. Section 11-52-3 provides the following:

> "Whoever, intentionally, without authorization, and for fraudulent or other illegal purposes, directly or indirectly, accesses, alters, damages, or destroys any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network shall be guilty of a felony * * *."

Likewise, § 11-52-4.1 provides, in pertinent part:

> "(a) It shall be unlawful for any person to use a computer or computer network without authority and with the intent to:
>
> "* * *

plaintiff had more than sufficient knowledge of what transpired relative to the surveillance of his computer activities to place a reasonable person in his place on notice of any potential claim against [ATC]." According to plaintiff, the discovery rule should have tolled the statute of limitations for his computer crime claims until some point after August 2013. It was only after that time, he argues, that he became aware of the name of the software and its functions and configurations. We disagree.[7]

---

> "(6) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network[.]"

Moreover, § 11-52.2-2 of the Software Fraud Act provides, in pertinent part:

> "It is unlawful for a person who is not an owner or operator to transmit computer software to the owner or operator's computer with actual knowledge or with conscious avoidance of actual knowledge and to use such software to do any of the following:
>
> "* * *
>
> "(2) Collect, through intentionally deceptive means, personally identifiable information:
>
> "(a) Through the use of a keystroke-logging function that records all keystrokes made by an owner or operator and transfers that information from the computer to another person;
>
> "(b) In a manner that correlates such information with data respecting all or substantially all of the websites visited by an owner or operator, other than websites operated by the person collecting such information; and
>
> "(c) Described in subsection (10)(d), (e), or (f)(i) or (ii) of § 11-52.2-1 by extracting the information from the owner or operator's hard drive[.]"

[7] The plaintiff also seems to argue that whether the discovery rule should apply is a factual question for a jury to decide. We do not agree with this argument. In *Benner v. J.H. Lynch &*

- 7 -

Section 9-1-14(b) provides that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after[.]" We have defined "injuries to the person" under that statute as follows:

> "[T]he phrase 'injuries to the person' as used in [§ 9-1-14] is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." *Commerce Oil Refining Corporation v. Miner*, 98 R.I. 14, 20-21, 199 A.2d 606, 610 (1964).

The hearing justice determined, and plaintiff concedes on appeal, that the three year statute of limitations is applicable. We agree with the hearing justice, and therefore apply § 9-1-14(b) to this case. *See, e.g.*, *Goddard v. APG Security-RI, LLC*, 134 A.3d 173, 177 (R.I. 2016) (holding that violations of an employer drug testing statute result in "injuries to the person" as defined in *Commerce Oil* because the nature of the right from that statute was analogous to an invasion of privacy and thus was subject to the § 9-1-14(b) statute of limitations).

Generally, "a cause of action accrues and the applicable statute of limitations begins to run at the time of the injury to the aggrieved party." *American States Insurance Company v. LaFlam*, 69 A.3d 831, 840 (R.I. 2013) (quoting *Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608, 616 (R.I. 2007)). Nevertheless, in limited circumstances, we have explained that "when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of

---

*Sons, Inc.*, 641 A.2d 332 (R.I. 1994), this Court held that the discovery rule in G.L. 1956 § 10-7-2 "is a question of law for the [hearing] justice to determine and for us to review using the same legal standard." *Benner*, 641 A.2d at 335. We apply that ruling to this case.

reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." *McNulty v. Chip*, 116 A.3d 173, 181 (R.I. 2015) (quoting *Martin v. Howard*, 784 A.2d 291, 299 (R.I. 2001)). "The reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured." *Id.* (quoting *Martin*, 784 A.2d at 300). We have cautioned, however, "that tolling a statute of limitations based upon the discovery rule should occur only in certain narrowly defined factual situations." *Hill*, 935 A.2d at 617 (refusing to hold that the discovery rule applied to negligence and intentional infliction of emotional distress claims, but holding that, even if it had applied, the plaintiff's cause of action would nonetheless have been time barred); *see also Parrillo v. Rhode Island Hospital*, 202 A.3d 942, 949 (R.I. 2019) (applying the discovery rule to wrongful death claims under G.L. 1956 § 10-7-2); *Grossi v. Miriam Hospital*, 689 A.2d 403, 404 (R.I. 1997) (applying the discovery rule to medical malpractice claims under § 9-1-14.1); *Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I. 1985) (applying the discovery rule in drug product liability actions); *Lee v. Morin*, 469 A.2d 358, 360 (R.I. 1983) (applying the discovery rule to improvements to real property).

We are of the opinion that the discovery rule is not applicable to plaintiff's computer crime claims under the circumstances of this case. *See Hill*, 935 A.2d at 617. We are satisfied that plaintiff knew of his alleged injury underlying his computer crime claims at the time he was arrested on child pornography charges, shortly after the police searched his work computer. However, even assuming that the discovery rule was applicable to plaintiff's computer crime claims, it is our opinion that the latest a reasonable person would have discovered such a cause of action against ATC was at plaintiff's unemployment hearing, which took place on January 24,

2012. *See McNulty*, 116 A.3d at 181. At that hearing, with plaintiff present, Lussier testified under oath as follows:

> "[LUSSIER]: * * * Once, once that was established that they, you know, that there was, um, pornography on the computer we installed tracking software on the computer.
>
> "REF: So now it's up and running again.
>
> "[LUSSIER]: It's up and running again. Every time Mr. Boudreau clicked on a website, sent an e-mail, opened a * * * program. It was logged and then e-mailed to me and to our IT person. And the record of those e-mails is, um, in the hands of state police.
>
> "* * *
>
> "REF: Tell me what you found.
>
> "[LUSSIER]: When we, when we found that Mr. Boudreau was e-mailing out pictures of his live-in girlfriend's daughter to somebody claiming that he had done, um, sexual acts, performed sexual acts, um, explicit information about her[.]
>
> "* * *
>
> "[LUSSIER]: I went to the Warwick Police."

Later in the hearing, Lussier further testified that a detective of the Warwick Police Department told Lussier that he "took a look at the images that we had, he took a look at the hard drive * * * what could potentially be on that hard drive and then determined that he wanted to search that computer." In addition to Lussier's testimony, on June 6, 2014, plaintiff himself testified under oath at a deposition as follows:

> "Q  Jason [Boudreau], you're aware that a software monitoring program was installed on your Dell desktop computer; correct?
>
> "A  Absolutely not.
>
> "Q  Since this litigation you're aware that it was done?

- 10 -

"A Actually, yes. And actually what – Honestly with you, I didn't know that the System Surveillance Pro or any monitoring software or tracking software, whatever you want to call it, was installed until January 24[, 2012] when Steve Lussier testified that that's what was on the computer."

Although we conclude that plaintiff knew of his alleged injury at the time police searched his work computer, we are satisfied that, even if the discovery rule applied in this case, plaintiff's deposition testimony reveals that he acquired actual knowledge of the facts of his injury no later than January 24, 2012. We therefore conclude that, in any case, plaintiff's claims are time barred by § 9-1-14(b) because the cause of action accrued no later than January 24, 2012, and plaintiff did not file his lawsuit until August 2016.

**B**

**Fraudulent Concealment**

The plaintiff next argues that § 9-1-20 should toll the statute of limitations for his computer crime claims because, he alleges, ATC fraudulently concealed the existence of said claims. The plaintiff contends that, in the District Court case, both Sorel and Lussier made numerous factual misrepresentations regarding the tracking software used on the work computer because they failed to disclose the software's functions, capabilities, and configurations.

Section 9-1-20 provides:

"If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."

"Pursuant to the provisions of § 9-1-20, if a potential defendant fraudulently conceals a cause of action from a potential plaintiff, the statute of limitations is tolled until such time as the plaintiff discovers the existence of a cause of action." *Ryan v. Roman Catholic Bishop of Providence*,

941 A.2d 174, 182 (R.I. 2008). To prove fraudulent concealment, it is a plaintiff's burden to show "(1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of the plaintiff's causes of action." *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 465-66 (R.I. 2016) (brackets omitted) (quoting *Ryan*, 941 A.2d at 182). The plaintiff must therefore "demonstrate that the defendant made an express representation or engaged in other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him or her to rely thereon to his or her disadvantage." *Id.* at 466 (brackets omitted) (quoting *Ryan*, 941 A.2d at 182-83). Importantly, we have recognized that "mere silence or inaction on the part of the defendant does not constitute actual misrepresentation in this context." *Id.* (brackets omitted) (quoting *Ryan*, 941 A.2d at 182).

We agree with the hearing justice's finding that plaintiff came forward with no evidence of any factual misrepresentation by ATC. The record is devoid of any evidence that would demonstrate that Sorel, Lussier, or anyone else connected to ATC made an express factual misrepresentation to plaintiff that tracking software had not been installed on the work computer. In fact, ATC did the exact opposite when it put plaintiff on notice of that fact at the unemployment hearing because plaintiff was present when Lussier clearly testified that tracking software had indeed been installed on plaintiff's work computer. The fact that Sorel and Lussier may not have disclosed the details of the functions, capabilities, and configurations of the software to plaintiff does not amount to a concealment of plaintiff's claims, and certainly there was no express representation to that effect. *See Hyde*, 139 A.3d at 466. Accordingly, plaintiff cannot benefit from the tolling provisions of § 9-1-20.

# C

## Continuing Violation Doctrine

The plaintiff cites to various federal court cases to support his assertion that the continuing violation doctrine should have been applied to toll the statute of limitations for his claim under the Rhode Island Wiretap Act.[8]  Specifically, plaintiff alleges that, although ATC intercepted plaintiff's communications only one time in 2011, ATC continued to unlawfully use those recorded communications in 2012, 2013, and 2014, when it was defending itself in plaintiff's federal court action.  The plaintiff therefore argues that the statute of limitations should have been tolled until the last time that ATC made use of plaintiff's recorded communications, which, according to plaintiff, was in May 2018.

"Under the continuing tort doctrine, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." 54 C.J.S. *Continuing Torts* § 223 at 258 (2010).  A review of our caselaw reveals that we have only applied the continuing tort doctrine only once, in the context of claims for

---

[8] General Laws 1956 § 12-5.1-13 provides a civil remedy under the Rhode Island Wiretap Act, and articulates the following:

> "Any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses the communications, and shall be entitled to recover from that person:
>
> "(1) Actual damages, but not less than liquidated damages, computed at the rate of one hundred dollars ($100) per day for each day of violation, or one thousand dollars ($1,000), whichever is higher;
>
> "(2) Punitive damages; and
>
> "(3) Reasonable attorneys' fees and other litigation disbursements reasonably incurred." Section 12-5.1-13(a).

conversion and unjust enrichment. *See Narragansett Electric Company v. Carbone*, 898 A.2d 87, 101 (R.I. 2006) ("The causes of action for conversion and unjust enrichment encompassed an ongoing and continuous theft of electricity from 1986 to 2000. The accrual of such actions, therefore, was not fixed in time as of the date the illegal bypass was installed."). Moreover, in line with caselaw from the First Circuit Court of Appeals, we have declined to apply the continuing violation doctrine to an age discrimination case when the underlying act was "a discrete act" and held that any alleged claims of discrimination after that act did not toll the running of the statute of limitations, but were merely continuing consequences of that single act.[9] *Croce v. State, Office of Adjutant General*, 881 A.2d 75, 79 (R.I. 2005); *see also Quality Cleaning Products R.C., Inc. v. SCA Tissue North America, LLC*, 794 F.3d 200, 206 (1st Cir. 2015) ("Courts have largely, if not exclusively, held that application of the continuing violation doctrine is cabined to certain civil rights or tort actions.").

---

[9] In a case in which we affirmed a trial justice's ruling that the plaintiff's action was time barred, we noted that the "facts plead, if proven, may constitute a continuing trespass by the town that would not be barred by the statute of limitations." *West v. Town of Narragansett*, 857 A.2d 764, 765 n.1 (R.I. 2004) (mem.). Recently, this Court reviewed the continuing course of conduct doctrine in a legal malpractice action, commenting that the doctrine

> "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. The doctrine is generally applicable under circumstances where it may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run." *Mendes v. Factor*, 41 A.3d 994, 1004 (R.I. 2012) (brackets and deletions omitted) (quoting *Giulietti v. Giulietti*, 784 A.2d 905, 925-26 (Conn. App. Ct. 2001)).

We held in *Mendes* that "this Court has not adopted the continuing course of conduct doctrine, and we decline to do so in the context of this case." *Id.* at 1005.

We believe that the facts of this case do not present the type of continuing activity that would trigger the application of the doctrine to plaintiff's claim under the Rhode Island Wiretap Act. Although the case at bar is not an employment discrimination case, *Croce* provides a helpful analysis to the narrow circumstances before us. In that case, the plaintiff, a seventy-two-year-old fiscal clerk, brought an age discrimination claim against her former employer. *Croce*, 881 A.2d at 76, 77. The defendant had notified the plaintiff that she was going to be laid off from her job, and, in order to avoid being laid off, the plaintiff exercised her contractual right to "bump" into a lower paying position. *Id.* at 76-77. She contended that, when she "bumped" into the lower paying position, she was performing the same duties that she had performed in her previous position but at a lower rate of pay. *Id.* at 77. She also alleged that she was required to climb stairs to her fourth floor office in a building that lacked an elevator, that she was transferred to another office that required a thirty-mile roundtrip daily commute and, although her younger colleagues received pay increases and computer training, she received neither. *Id.* The trial justice determined that the case was time barred under the applicable statute of limitations. *Id.* The plaintiff appealed, alleging that the continuing violation doctrine tolled the statute of limitations because there was "a pattern of continuing discriminatory acts and that at least one of those discriminatory acts occurred within [the] statute of limitations period." *Id.* at 78. We held, however, that the continuing violation doctrine did not apply to the plaintiff's case because the alleged underlying discriminatory act—the initial notification that the plaintiff was going to be laid off from her job—had occurred more than three years before the plaintiff filed her complaint and that any other instances of alleged discrimination occurring afterward were merely continuing consequences of that single act. *Id.* at 79. We held that the initial incident constituted a "discrete act" and that the statute of limitations period began to run at that time. *Id.*

We also concluded that the layoff was a "one-time administrative act" and "was not the product of a discriminatory policy or practice." *Id.* at 80.

Paralleling our reasoning in *Croce*, in this case the "discrete act" that triggered plaintiff's claim under the Rhode Island Wiretap Act took place when ATC installed tracking software on his work computer in June 2011. *See Croce*, 881 A.2d at 79. After that one incident, ATC did not track or store plaintiff's information again. We are of the opinion, then, that ATC's decision to produce the information it found on the work computer to establish its defense during the federal court litigation and the case before us was a consequence of installing the tracking software on the work computer. *See id.*; *see also Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 51 (1st Cir. 2011) ("Even under [the continuing violation] doctrine, the 'ongoing injuries' or harmful 'effects' of a single unlawful act do not extend the limitations period.") (quoting *Jenson v. Frank*, 912 F.2d 517, 523 (1st Cir. 1990)); *Carpenter v. Texaco, Inc.*, 646 N.E.2d 398, 399 (Mass. 1995) ("[A] continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct."). Therefore, we hold that the continuing violation doctrine does not apply to plaintiff's Rhode Island Wiretap Act claim against ATC.[10]

---

[10] The plaintiff also argues that the hearing justice erred by not granting plaintiff time for discovery prior to the motion to dismiss being converted into a motion for summary judgment. However, after reviewing the record, plaintiff neither moved for a continuance nor submitted an affidavit "stating why he * * * cannot present facts in opposition to the motion" in accordance with Rule 56(f) of the Superior Court Rules of Civil Procedure. *Berard v. HCP, Inc.*, 64 A.3d 1215, 1220 (R.I. 2013). Indeed, it was he who asked that the motion to dismiss be converted to a motion for summary judgment. As such, this issue is not properly before us on appeal. *See Costantino v. Ford Motor Company*, 178 A.3d 310, 312 n.2 (R.I. 2018) (mem.).

**IV**

**Conclusion**

For the foregoing reasons, we affirm the judgment of the Superior Court. The papers shall be remanded to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jason Boudreau v. Automatic Temperature Controls, Inc. et al. |
| **Case Number** | No. 2018-91-Appeal.<br>(PC 16-3609) |
| **Date Opinion Filed** | June 20, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Jason Boudreau, Pro Se |
| | For Defendants:<br><br>Christopher J. Fragomeni, Esq.<br>Douglas A. Giron, Esq. |