January 14, 2022

**Supreme Court**

No. 2019-373-Appeal.
(PC 16-5649)

Augustine Eddy                    :

v.                    :

Pascoag Fire District et al.            :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Augustine Eddy            :

v.                  :

Pascoag Fire District et al.      :

Present:  Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The plaintiff, Augustine Eddy (Eddy or plaintiff), appeals from a Superior Court judgment entered in favor of the defendants, Pascoag Fire District (the district) and Pascoag Fire and Rescue Association, International Association of Firefighters, Local 4908 (the union) (collectively defendants), in this action alleging breach of contract and breach of duty of fair representation.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

**Facts and Travel**

The plaintiff is trained as a firefighter and emergency medical technician (EMT) and holds various related licenses and certifications. In 1997 he began working per diem for the district, and he became a full-time employee in 2013. In January 2016, the district presented Eddy with a plan for remedial training to address complaints from his partner regarding his job performance. Eddy was given three months to show improvement before the district would consider suspension.

Thereafter, on March 27, 2016, plaintiff and three coworkers were dispatched to transport a thirty-seven-year-old patient with paraplegia experiencing difficulty breathing. Eddy was the primary patient caregiver for the dispatch. During the transport, the patient lost consciousness and ultimately passed away at the hospital. The plaintiff was told that night that he was suspended, with pay, pending an investigation.

On March 29, 2016, the district met with plaintiff regarding his suspension. The plaintiff asserts that, shortly after the meeting, he spoke via telephone with Harold Carter, chief of the district (Chief Carter). The plaintiff alleges that, during that telephone call, Chief Carter "basically threatened" him by claiming that things would get worse for Eddy if he pursued the issue. The day after the meeting with the district and telephone call with Chief Carter, Eddy wrote a letter to Chief Carter explaining his actions during the transport. The plaintiff was notified in writing the

next day, March 31, 2016, that he was suspended with pay pending Chief Carter's internal investigation.

On April 3, 2016, Chief Carter sent a letter to the Board of Fire Commissioners (the board) notifying the board that he was recommending plaintiff's termination. The letter stated that Chief Carter had suspended plaintiff with pay pending an investigation following the March 27, 2016 incident and that a subsequent investigation found deficiencies in plaintiff's performance during the transport. Chief Carter's letter concluded that plaintiff's failures, in addition to his admission to Chief Carter shortly after the incident that "I know, I know, my skills are not what they should be, I should of [*sic*] started an IV[,]" made clear that the action plan that had been implemented earlier in the year to address plaintiff's need for improvement had had no effect on his performance.

On April 6, 2016, the district held a pretermination hearing to provide plaintiff with an opportunity to respond to the issues that had led to Chief Carter's recommendation that he be terminated. At that hearing, plaintiff presented a letter from Daren Girard, M.D., the physician who had treated the patient who had been transported to the hospital by Eddy and his coworkers on March 27, 2016. In his letter, Dr. Girard opposed any sanction or disciplinary action against plaintiff and asserted that plaintiff had performed his duties appropriately. Additionally, on the

same day as the pretermination hearing, Eddy wrote to Chief Carter requesting to see all the documentation in his employment file.

The plaintiff was terminated by the district on April 12, 2016. By letter, Chief Carter reiterated that his recommendation that Eddy be terminated was based on Eddy's "conduct and performance during a rescue run on March 27, 2016[,]" and his "continuing and ongoing inability to perform the functions of [his] position despite counseling and additional training." On April 19, 2016, plaintiff met with the executive board of the union to discuss his termination and the grievance process steps, including arbitration.

Thereafter, plaintiff began the grievance process in accordance with the collective bargaining agreement (CBA) between the district and the union.[1] On April 24, 2016, pursuant to the CBA, plaintiff submitted his initial grievance alleging wrongful termination and requesting that the district immediately rescind the termination. This grievance was rejected by Chief Carter on the grounds that Eddy had failed to exercise good judgment and take basic actions during a critical situation—the March 27, 2016 transport incident—and that he had his performance called into question in the past and had not improved despite efforts to that end. On May 3, 2016, plaintiff proceeded to the next step of the grievance process, again

[1] Article 12 of the CBA establishes a framework pursuant to which the aggrieved member moves through a three-step grievance process. Thereafter, the union may seek arbitration if it desires to proceed further with a grievance.

alleging wrongful termination and requesting that the district immediately rescind the termination. This grievance was similarly rejected by David Carpenter, the chairman of the board.

By letter dated June 10, 2016, the union executive board informed Eddy that it had decided not to seek arbitration for his grievance. The executive board opined in that letter that plaintiff's termination had merit. The union president later represented in an interrogatory answer that the union "could not afford going to arbitration" for Eddy. According to Eddy, however, one day before the deadline to submit the matter to arbitration, the union informed Eddy that it would proceed to arbitration provided that Eddy retain an attorney at his own expense. The plaintiff asserts that he "was unable to retain an attorney to handle the arbitration so the deadline passed without the union filing for arbitration." Eddy sought no further relief through the administrative process.

On December 7, 2016, plaintiff filed a Superior Court complaint alleging breach of duty of fair representation against the union and breach of contract against the district. The district subsequently moved for summary judgment, arguing that plaintiff could not prevail because (1) he failed to exhaust his administrative remedies; (2) the union had fulfilled its duty of fair representation; and (3) the district did not breach the CBA. The plaintiff objected to summary judgment, maintaining that genuine issues of material fact existed as to whether (1) the union acted

arbitrarily, discriminatorily, or in bad faith, or had handled the grievance in a perfunctory manner; (2) the district should be equitably estopped from asserting that plaintiff did not exhaust his administrative remedies; and (3) the district had just cause to terminate plaintiff based on the March 27, 2016 transport incident.

On February 20, 2019, a hearing was held in the Superior Court on the district's motion for summary judgment. On March 1, 2019, the trial justice rendered a bench decision finding that plaintiff had failed to exhaust the grievance and arbitration proceedings before filing suit, and rejecting plaintiff's equitable estoppel claim. An order granting the district's summary-judgment motion was entered on March 25, 2019, and final judgment entered in favor of defendants on May 7, 2019. The plaintiff timely appealed to this Court on May 24, 2019.

### Standard of Review

"This Court reviews a decision granting a party's motion for summary judgment *de novo*." *Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 750 (R.I. 2021) (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019)). We examine the case "from the vantage point of the trial justice who passed on the motion for summary judgment" and "view the evidence in the light most favorable to the nonmoving party[.]" *Id.* at 750-51 (quoting *Boudreau*, 212 A.3d at 598). "[I]f we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as

a matter of law, we will affirm the judgment." *Id.* at 751 (quoting *Boudreau*, 212 A.3d at 598). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Id.* (quoting *Boudreau*, 212 A.3d at 598).

**Discussion**

On appeal, plaintiff asserts that there are genuine issues of material fact relative to whether defendants intentionally induced him not to pursue his grievance by threatening his EMT license and by refusing to pay for arbitration. He maintains that defendants' actions amount to equitable estoppel, and that the trial justice erred in granting summary judgment. Specifically, plaintiff claims that he was threatened by Chief Carter's statements to him via telephone on March 30, 2016, regarding plaintiff's EMT license. The plaintiff alleges that Chief Carter told him, "I wouldn't pursue this if I were you. You have a lot to lose. Your license is your life." Eddy alleged further at his deposition that Chief Carter told him, "Your EMT license is your life and things are going to get very bad for you if you pursue this[.]" The plaintiff also contends that, although he failed to exhaust his administrative remedies, he only failed to do so because the union created a condition it knew he could not meet by requiring him to bear the entire cost of arbitration, with one day's notice.

- 7 -

Conversely, the district maintains that summary judgment was properly granted because, the district alleges, plaintiff failed to present sufficient evidence to support his claim of equitable estoppel. Further, the district asserts that plaintiff's claims necessarily fail because he did not establish that the district breached the CBA or that the union failed to fulfill its duty of fair representation.[2]

To successfully invoke the doctrine of equitable estoppel, a claimant must establish

> "[f]irst, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Faella v. Chiodo*, 111 A.3d 351, 357 (R.I. 2015) (quoting *Cigarrilha v. City of Providence*, 64 A.3d 1208, 1213 (R.I. 2013)).

Here, plaintiff cannot establish that defendants' conduct induced his failure to act. Indeed, the record in this case establishes that Eddy continued to challenge his termination after the alleged "threatening" conversation with Chief Carter; his estoppel claim therefore fails.

Specifically, on March 30, 2016, the day after Eddy's conversation with Chief Carter, Eddy wrote a letter addressed to Chief Carter explaining his actions during

---

[2] The union did not submit a counterstatement pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, appear for oral argument, or otherwise participate in the instant appeal.

the March 27, 2016 rescue run. About a week later, on April 6, 2016, plaintiff attended his pretermination hearing and submitted a letter to Chief Carter requesting to see documentation in his employment file. On April 19, 2016, plaintiff met with the executive board of the union to discuss the grievance process and arbitration. On April 24, 2016, plaintiff continued pursuing the formal grievance process set forth in the CBA. When he did not succeed at that step, he proceeded and was again unsuccessful.

The plaintiff's actions are clearly inconsistent with his assertion that he was deterred by Chief Carter's alleged threat on March 30, 2016. After that conversation with Chief Carter, Eddy repeatedly engaged with Chief Carter over the next several weeks, as well as the union and its members and the board, while pursuing the grievance process under the CBA.

The plaintiff also contends that he was estopped from exhausting his administrative remedies because the union required him to bear the entire cost of arbitration, with one day's notice. The plaintiff stated in his February 12, 2019 affidavit in support of his objection to the district's motion for summary judgment that, "[b]ecause of the timing of this notification, I was unable to retain an attorney to handle the arbitration so the deadline passed without the union filing for arbitration." We note that the referenced "deadline" simply required, under Article 12, Section 3 of the CBA, that Eddy notify Chief Carter in writing of his desire to

proceed further with the grievance. Although Eddy claims that the deadline passed because he was unable to retain an attorney, we fail to see how the union's "condition" prevented Eddy from expressing, on his own behalf, his desire to proceed with the grievance; that was all that was required by Eddy in that time frame under the CBA.

Additionally, we discern no competent evidence in the record to suggest that the union prevented plaintiff from exhausting the administrative remedies available to him. Specifically, under the union's constitution and by-laws, plaintiff had the ability to appeal the union's decision not to pay for arbitration to the union's general president, but he failed to do so. There is no evidence to suggest that the union prevented him from appealing under the union by-laws. Therefore, plaintiff fails to establish that the union induced him to fail to act. *See State v. Parrillo*, 158 A.3d 283, 293 (R.I. 2017) (concluding that equitable estoppel did not apply where claimant failed to show that his conduct "was somehow induced" by the opposing party's actions).

Because we are satisfied that plaintiff did not exhaust his administrative remedies and that his equitable estoppel claim fails as a matter of law, he cannot establish an action for breach of duty of fair representation against the union. *See Almeida v. Plasters' and Cement Masons' Local 40 Pension Fund*, 722 A.2d 257, 259 (R.I. 1998) ("The general rule is that a plaintiff first must exhaust his [or her]

administrative remedies before seeking judicial review of an administrative decision."); *see also Bellevue-Ochre Point Neighborhood Association v. Preservation Society of Newport County*, 151 A.3d 1223, 1232 (R.I. 2017) (finding that a plaintiff was required to exhaust administrative remedies before resorting to judicial review where the plaintiff had a mechanism, through the zoning board, to pursue the issues asserted in the complaint).

Further, because Eddy's claim that the union breached its duty of fair representation fails, his claim against the district for breach of contract also must fail. *See DiGuilio v. Rhode Island Brotherhood of Correctional Officers*, 819 A.2d 1271, 1273 (R.I. 2003) (recognizing federal law that "in order to prevail in court against an employer for breach of contract when a union refuses to arbitrate an employee's grievance, the employee must demonstrate not only that the employer breached the contract but also that the union breached its duty to represent the employee fairly").

Accordingly, we discern no error with the trial justice's grant of summary judgment. The plaintiff failed to produce competent evidence proving the existence of a disputed issue of material fact, and therefore the defendants were entitled to judgment as a matter of law.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.  The record in this case may be returned to the Superior Court.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Augustine Eddy v. Pascoag Fire District et al. |
| **Case Number** | No. 2019-373-Appeal.<br>(PC 16-5649) |
| **Date Opinion Filed** | January 14, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mark P. Gagliardi, Esq.<br><br>For Defendants:<br><br>Mary W. McBurney, Esq.<br>Joseph F. Penza, Jr., Esq. |

SU-CMS-02A (revised June 2020)