June 29, 2020

**Supreme Court**

No. 2018-198-Appeal.
No. 2018-199-Appeal.
No. 2018-200-Appeal.
No. 2018-201-Appeal.
No. 2018-202-Appeal.
No. 2018-203-Appeal.
No. 2018-204-Appeal.
(PC 12-1844)

Dionisio Polanco et al.                    :

v.                    :

James J. Lombardi, III, in his capacity as    :
Treasurer of the City of Providence, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2018-198-Appeal.
No. 2018-199-Appeal.
No. 2018-200-Appeal.
No. 2018-201-Appeal.
No. 2018-202-Appeal.
No. 2018-203-Appeal.
No. 2018-204-Appeal.
(PC 12-1844)
(Dissent begins on Page 27)

Dionisio Polanco et al.                          :

v.                          :

James J. Lombardi, III, in his capacity as                          :
Treasurer of the City of Providence, et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The plaintiffs, Dionisio Polanco and his wife Alexandra

Lozada-Polanco, individually and on behalf of their five minor children, appeal from an April 10,

2018 final judgment of the Providence County Superior Court for the defendants, James J.

Lombardi, III, in his capacity as Treasurer of the City of Providence, and Officer Michael

Camardo, on all counts in the plaintiffs' complaint.  The final judgment followed a February 28,

2018 bench decision and an April 10, 2018 order of the Superior Court granting the defendants'

motion for summary judgment on the ground that the statute of limitations had run before the

plaintiffs filed their complaint in the instant case.  On appeal, the plaintiffs make the following

contentions with respect to the running of the statute of limitations in this case: (1) the discovery

rule should be applied when, as the plaintiffs purport occurred in the instant case, "an innocent

plaintiff is convicted of a crime because of a police officer's egregiously negligent failure to record

- 1 -

or report exculpatory evidence, and the plaintiff did not know, and could not have known, the existence of that exculpatory evidence;" (2) "[f]rom when Mr. Polanco was convicted through when his conviction was vacated, the Exoneration Rule prevented Plaintiffs-Appellants from bringing this claim, and the statute of limitations on negligence claims arising from his conviction were tolled;" (3) "[b]ecause Officer Camardo made actual misrepresentations that concealed his egregious negligence, G.L. 1956 § 9-1-20 delayed accrual of this claim;" and (4) the statute of limitations should be equitably tolled given the particular facts of this case.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

Fortunately, the facts and travel of this case are largely not in dispute; and we shall proceed at once to relate the circumstances forming the basis of this action. In so doing, we rely primarily on the first amended complaint, defendants' memorandum accompanying their motion for summary judgment in Superior Court, and the hearing justice's bench decision, as well as other documents contained in the record.

The negligence case with which the Court is presented today arose from the criminal conviction of Mr. Polanco, which conviction was eventually the subject of a successful motion for a new trial resulting in the ultimate dismissal of the case by the state. The incident which formed the basis of the criminal case at issue occurred on August 13, 2005, when Fernando Fernandez was assaulted with a pool cue at the Mi Sueño club in Providence, Rhode Island. Officer Michael Camardo of the Providence Police Department responded to the club after a report of a simple assault. After conducting some degree of investigation, Officer Camardo determined that the complaint was unfounded. It is undisputed that he did not file a police report. Mr. Polanco alleges

that Luz Morales and her son-in-law, Lexsandro Collazo, were present at the club at the time of the incident and were interviewed by Officer Camardo but that he never reported those interviews.

The police separately responded to a call from a friend and family members of the victim at the hospital. An investigation then ensued, in which the club owner, Jesus Titin, identified the assailant as having been Mr. Polanco. Mr. Polanco was ultimately arrested in 2007 for felony assault pursuant to G.L. 1956 § 11-5-2. He was arraigned on October 5, 2007 and ultimately tried in a bench trial in 2008.

At trial, Mr. Titin changed his earlier statement by testifying that it was not Mr. Polanco who struck Mr. Fernandez. Importantly, Mr. Titin testified at trial on direct examination as follows with respect to the officer who responded to the club on the night at issue (Officer Camardo): "He was a rookie. He didn't do a report. He messed up." Mr. Titin, when being cross-examined by Mr. Polanco's attorney at trial, also mentioned the fact that the officer did not file a police report. Ramona Vasquez, a cook at the Mi Sueño club, testified at trial that the assailant on the night in question was Mr. Polanco. On July 30, 2008, Mr. Polanco was found guilty and was later sentenced to ten years imprisonment, with four years to serve and the remainder suspended, with probation, restitution, and $550 in fines; he was also ordered to have no contact with the victim, Mr. Fernandez.

In the Summer of 2010, while Mr. Polanco was serving his sentence, Ms. Morales returned to Rhode Island from Puerto Rico and learned of Mr. Polanco's conviction. She and Mr. Collazo executed affidavits stating that they had witnessed the assault at issue, that Mr. Polanco was not the assailant, and that they both had given statements on that night to a police officer at the scene, which statements included a physical description of the assailant. In September of 2010, Mr. Polanco filed a motion for a new trial. That motion was subsequently granted following a hearing

before the trial justice. At that time, Mr. Polanco had been released from serving his sentence at the Adult Correctional Institutions; but, according to the first amended complaint, he had been remanded to the custody of United States Immigration and Customs Enforcement (ICE) for deportation. The state ultimately dismissed the criminal case against Mr. Polanco pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

The plaintiffs filed the initial complaint in the instant case in April of 2012. Ultimately, a first amended complaint was filed, which alleged one count of negligence against Officer Camardo (and John Does), stating that Officer Camardo "negligently failed to complete and file a police report concerning the Assault resulting in the non-disclosure to Mr. Polanco and/or his criminal defense counsel, up through and during the course of the State's criminal prosecution, conviction and incarceration of him, of the identity of Ms. Morales and Mr. Collazo and their statements that they were witnesses to the Assault and their description of the assailant." The first amended complaint added one count of negligence against the City of Providence based on the alleged status of Officer Camardo (and the John Does) as "agents, employees, or servants of the City of Providence acting within the scope * * * thereof."[1] The plaintiffs claimed that the damage proximately caused to Mr. Polanco by the purported negligence of defendants was a thirty-two-month incarceration, his being remanded to ICE for deportation, loss of earning capacity, extreme pain and suffering, and deprivation of the society and companionship of his wife and children. With respect to the remaining plaintiffs, it was alleged that they suffered damages due to their respective loss of Mr. Polanco's society and companionship.

---

[1] It is clear to us that the gravamen of that allegation is that the City of Providence was negligent under the theory of respondeat superior.

After some discovery was conducted, defendants filed a motion for summary judgment, alleging that plaintiffs were "unable to recover as this suit is time barred by the [three-year] statute of limitations." The plaintiffs objected to the motion, arguing that the discovery rule should apply in this case and that it was impossible for Ms. Morales and Mr. Collazo to be discovered until they came forward in August of 2010. The plaintiffs also raised an equitable tolling argument in their supplemental memorandum in opposition to the motion. A hearing was conducted on February 7, 2018.

On February 28, 2018, the hearing justice issued a bench decision on defendants' motion for summary judgment. She began by detailing the facts, noting that Officer Camardo did not complete a police report with respect to the assault at issue. She also noted that he continued to maintain that he did not take statements from Ms. Morales and Mr. Collazo. The hearing justice stated that, for the purposes of the motion for summary judgment before her, she would assume that Officer Camardo had taken those statements. *See Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 532 (R.I. 2013) ("In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party."). She then went on to state that there were no material facts at issue. She noted that the parties agreed that the applicable statute of limitations was three years under G.L. 1956 § 9-1-14(b).

In conducting her analysis, the hearing justice looked to the record to determine "when Mr. Polanco knew that he had suffered an injury," and she determined that Mr. Polanco "knew he had suffered an injury when he was denied his liberty." She concluded that the statute of limitations began to run when Mr. Polanco began to serve his sentence on July 30, 2008, which was more than three years prior to the filing of the complaint in this case.

The hearing justice then proceeded to consider whether or not the statute of limitations was tolled by § 9-1-20 or another equitable principle. She concluded that § 9-1-20 required an actual misrepresentation and in the instant case the allegation was that Officer Camardo failed to file a police report, not that he "made an express representation or engaged in other affirmative conduct." The hearing justice then considered the applicability of the discovery rule to the instant case, concluding that "the discovery rule applies only in limited classes of cases: medical malpractice cases; products liability actions for damage to personal property; damage to real property; products liability cases against drug manufacturers; and legal malpractice actions * * *." She then stated that "[t]he instant case simply does not fall into one of these limited categories." The hearing justice consequently granted defendants' motion for summary judgment. An order entered to that effect on April 10, 2018.

Final judgment for all defendants on all counts in the first amended complaint entered on April 10, 2018. The plaintiffs filed separate timely notices of appeal. This Court consolidated the appeals.

## II

### Standard of Review

This Court reviews the grant of a motion for summary judgment in a *de novo* manner. *Correia v. Bettencourt*, 162 A.3d 630, 635 (R.I. 2017). In so doing, we "employ[ ] the same standards and rules used by the hearing justice," and "[w]e will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted); *see also Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013). We have stated that "the nonmoving party bears the burden of

- 6 -

proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016) (internal quotation marks omitted). "[S]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Employers Mutual Casualty Co. v. Arbella Protection Insurance Co.*, 24 A.3d 544, 553 (R.I. 2011) (internal quotation marks omitted).

We have also specifically stated that "[w]hether a statute of limitations has run against a plaintiff's claim is * * * a question of law that we likewise review *de novo*." *Hyde v. Roman Catholic Bishop of Providence*, 139 A.3d 452, 460 (R.I. 2016) (internal quotation marks omitted).

## III

## Analysis

## A

## The Discovery Rule

We begin by noting that the parties are in agreement that the statute of limitations applicable to this case is three years. *See* § 9-1-14(b)[2] (providing that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after"); *see also* § 9-1-41(d); *Ho-Rath v. Rhode Island Hospital*, 115 A.3d 938, 950 (R.I. 2015) (noting that "though they constitute separate and distinct claims, loss-of-consortium and loss-of-society claims still are subject to the applicable statutes of limitation for the impaired party's underlying claims") (internal quotation marks omitted). Thus, Mr. Polanco

---

[2]     The plaintiffs state in their brief that, in their opinion, G.L. 1956 § 9-1-25 applies to the respondeat superior claim at issue in this case. Even assuming that they are correct, that point is immaterial because both statutes provide for the same three-year statute of limitations.

had three years from accrual of the cause of action to file this suit. Accordingly, we must initially inquire as to when the cause of action accrued.[3]

"It is generally held that mere ignorance of the facts which constitute the cause of action will not postpone the operation of the statute of limitations, but the statute will run from the time the cause of action first accrues notwithstanding such ignorance." *Astle v. Card*, 52 R.I. 357, 361, 161 A. 126, 128 (1932). We have stated that "a cause of action accrues and the applicable statute of limitations begins to run at the time of the injury to the aggrieved party." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 600 (R.I. 2019) (internal quotation marks omitted); *see also Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608, 616 (R.I. 2007). In applying this rule to the facts of the case before us, we are of the opinion that Mr. Polanco's injuries were first sustained when he was arraigned and bound over for trial on October 5, 2007. It was then that his incarceration and its attendant harms began to befall him and his family members. We need not look to when every alleged injury accrued, only when injury first accrued to plaintiffs. *See Astle*, 52 R.I. at 361, 161 A. at 128; *see also Hill*, 935 A.2d at 617 ("It is not the degree of suffering that is controlling, but rather when the actionable injury arose."). The October 5, 2007 arraignment was clearly more than three years prior to the April 2012 filing of the complaint in this action. As such, this action is untimely unless the plaintiffs can avail themselves of one of the theories for tolling the statute of limitations that are recognized in our law. The first theory of tolling which we must confront is the discovery rule.

The plaintiffs argue that it was error on the part of the hearing justice not to apply the discovery rule to this case so as to toll the statute of limitations. They aver that the discovery rule

---

[3]     We note that it is the statute of limitations and only the statute of limitations that is at issue in this appeal; we are not concerned with any of the elements of negligence in deciding the case before us.

"delays accrual of a claim until the plaintiff knows or should have known *both* that he suffered an injury *and* that *tortious conduct caused the injury*."  (Emphasis in original.)  They contend that they "had no way of knowing about the wrongful act that caused their injury—Officer Camardo's failure to record any information about the two witnesses, exculpatory or otherwise—until August 2010, rendering the Discovery Rule applicable and this claim timely."

Specifically, plaintiffs contend that simply knowing that Officer Camardo did not file a police report did not cause their claims to accrue because: (1) Mr. Polanco did not know that he suffered an injury as a result of the lack of a police report because the existence of the witnesses at issue was "unknown" and "unknowable" to him; and (2) Mr. Polanco was unable to discover the witnesses with a reasonably diligent investigation.

The defendants contend, with respect to the applicability of the discovery rule, that this Court has not, in the past, applied the discovery rule to cases of this type and should not do so here. They further posit that, even if the discovery rule is applied in this case, the suit is still time-barred because plaintiffs knew of the breach at the time of trial when there was testimony that Officer Camardo did not file a police report and they knew of the injury when Mr. Polanco was incarcerated prior to trial but they failed to investigate further or file suit within three years.

We have stated that, "[i]n some narrowly circumscribed factual situations * * * when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." *Mills v. Toselli*, 819 A.2d 202, 205 (R.I. 2003) (internal quotation marks omitted); *see Boudreau*, 212 A.3d at 600; *see also Renaud v. Sigma-Aldrich Corp.*, 662 A.2d 711, 715 (R.I. 1995) (stating that "the discovery

rule concerns the discovery that one has suffered an injury, not the discovery of the identity of the party allegedly responsible for causing the injury").

When applicable, "[t]he heart of the discovery rule is that the statute of limitations does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the wrongful conduct of the [defendant]." *Mills*, 819 A.2d at 205 (internal quotation marks omitted). "The reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured." *Id.* (internal quotation marks omitted); *see Boudreau*, 212 A.3d at 600. "The discovery-rule exception serves to protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for a particular claim [and] * * * [i]t requires only that the plaintiff be aware of facts that would place a reasonable person on notice that a potential claim exists." *Behroozi v. Kirshenbaum*, 128 A.3d 869, 873 (R.I. 2016) (internal quotation marks omitted).

However, "[w]e have cautioned * * * that tolling a statute of limitations based upon the discovery rule should occur only in certain narrowly defined factual situations." *Boudreau*, 212 A.3d at 600 (internal quotation marks omitted). For example, this Court has applied the discovery rule to medical malpractice actions, *see Wilkinson v. Harrington*, 104 R.I. 224, 234, 243 A.2d 745, 751 (1968), drug product liability actions, *see Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I. 1985),[4] and improvements to real property. *See Lee v. Morin*, 469 A.2d 358, 360 (R.I. 1983).

---

[4] It is worth noting that we have gone out of our way to caution that "we must be mindful not to interpret *Anthony* [*v. Abbott Laboratories*, 490 A.2d 43 (R.I. 1985),] to extend far beyond the facts on which it was based." *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332, 337 (R.I. 1994).

We have never held,[5] nor do we do so now, that the discovery rule applies to tort claims such as those at issue in the case presently before us. That being said, it is clear to this Court that, even if we were to assume that the discovery rule applied to this case, it would not save plaintiffs' claims. Without feeling obliged to decide precisely when plaintiffs discovered or should have discovered the cause of action, we can easily reach the conclusion that the latest possible time that discovery could have occurred was, as the hearing justice found, at the time of Mr. Polanco's conviction, which was more than three years prior to the filing of the complaint in this action.

In our judgment, plaintiffs knew of their injury at the time of the arraignment and under no plausible scenario could they have known of the injury any later than the conviction. Mr. Polanco would have known he was innocent from the moment of his arrest, at his arraignment, and when he was convicted. *See Renaud*, 662 A.2d at 715 (stating that "the discovery rule concerns the discovery that one has suffered an injury, not the discovery of the identity of the party allegedly responsible for causing the injury").

What is more, plaintiffs knew at trial that the first officer who responded to the scene on the night in question did not file a police report. That knowledge would have put a reasonable person on notice that a potential claim existed. *See Behroozi*, 128 A.3d at 873. In the opinion of this Court, a person exercising reasonable diligence should have been on notice that further investigation into what was not disclosed in the unfiled police report may have been necessary. *See Mills*, 819 A.2d at 205. It does not appear from the record in this case that a reasonable

---

[5] The plaintiffs contend that, in *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594 (R.I. 2019), this Court, as plaintiffs characterize it, "assumed for portions of its decision that the Discovery Rule *could* apply in a case of this *type*, though not on *these specific facts*." (Emphasis in original.) We do not read our opinion in *Boudreau* as so stating. Rather, we read that opinion as holding the discovery rule to be inapplicable and then stating that, even if we assumed it was applicable, it still would not have saved the claims at issue. *Boudreau*, 212 A.3d at 600. Although the distinction is subtle, we believe it is important.

investigation occurred. It appears that Officer Camardo was never questioned by the defense at any point before or during the trial.

The plaintiffs contend that any investigation on their part would have been futile and would not have led to the discovery of the two unidentified alibi witnesses; they claim that the existence of the two witnesses was "unknowable." They rely on the fact that Officer Camardo has, in the course of Mr. Polanco's motion for a new trial in his criminal case and in this civil action, repeatedly denied, under oath, taking any witness statements that night. However, it is pure speculation that Officer Camardo would have denied taking any witness statements if asked during the pendency of Mr. Polanco's trial. He may well have denied it, but the exercise of reasonable diligence would have involved at the very least questioning Officer Camardo and, since that was not done, we are left to merely speculate as to what he may or may not have disclosed. The discovery rule does not require this Court to determine in this case what would have been discovered had a thorough investigation been undertaken, but rather the burden is on the party seeking to apply the discovery rule to show that reasonable diligence was used.

Moreover, we note that our conclusion is not altered irrespective of whether the negligence of Officer Camardo on which we focus is the fact that he did not file a police report, or, as plaintiffs contend, the "egregious failure to disclose *critical, exculpatory witness statements * * *.*" (Emphasis in original.) The knowledge that Officer Camardo did not file a police report should have put plaintiffs on notice that a further investigation as to what may have been in that report was required. *See Behroozi*, 128 A.3d at 873.

Thus, it is clear to this Court that, even if the discovery rule were to be applied to this case, plaintiffs knew or should have known of the potential claims at issue, at the latest, at the time of

Mr. Polanco's conviction, which conviction occurred more than three years prior to the filing of this action.

Contrary to the assertions of plaintiffs, in the opinion of this Court, our decision in *Hill*, 935 A.2d at 608, and our more recent decision in *Boudreau*, 212 A.3d at 594, are on point with respect to the case presently before us. A more detailed look at the facts of those cases buttresses our conclusion with respect to the case before us.

In *Hill*, the plaintiff filed suit for negligence, intentional infliction of emotional distress, and malicious prosecution arising from his having been charged with conspiring to obtain money under false pretenses and aiding and abetting another in obtaining money under false pretenses; those charges were ultimately dismissed. *Hill*, 935 A.2d at 610, 612. Summary judgment was granted to defendants on the negligence and intentional infliction of emotional distress claims based upon the statute of limitations. *Id.* at 612. The plaintiff argued that the discovery rule should be applied to his case because "the severe level of stress caused by the criminal indictment in May 1995 did not manifest itself until his heart attack on June 27, 1998" and because "he was unaware of the state's wrongdoing until the charges against him were voluntarily dismissed in July 1999." *Id.* at 616. This Court held that the discovery rule did not apply to tort claims such as the ones presented, but that, even if it did, the plaintiff "discovered or should have discovered that he suffered actionable injuries as early as 1995." *Id.* at 617. The Court held that some of the harm which befell Mr. Hill began in 1995 at the time of his indictment and he "knew or, in the exercise of reasonable diligence, should have known, that he had suffered an injury" at that time. *Id.* The Court further held that the argument that the statute of limitations did not accrue until the charges were voluntarily dismissed could not prevail because "[t]he plaintiff acknowledged that he had access to the transcripts of the grand jury proceedings" before the charges were dismissed. *Id.*

The Court further stated that, "[a]lthough an investigation into the cause of an injury may be a long process, it ordinarily does not toll the statute of limitations because such an interpretation would render the statute of limitations meaningless and ineffective." *Id.*

In *Boudreau*, the plaintiff's employer (who was also a defendant) had installed a software program on the plaintiff's computer to monitor the content displayed on his computer screen shortly before his employment was ultimately terminated in June of 2011. *Boudreau*, 212 A.3d at 596. The information gained through the use of the program was given to the police, and the plaintiff was arrested and convicted for possession of child pornography. *Id.* The plaintiff first found out about the computer software during a hearing before the Rhode Island Department of Labor and Training Board of Review in January of 2012. *Id.* The plaintiff filed the suit at issue in August of 2016, which suit included, among other claims, claims for negligence. *Id.* at 597. Summary judgment was ultimately granted to the defendants on statute of limitations grounds. *Id.* at 597-98. This Court held that the discovery rule was not applicable to the case and that the plaintiff knew of his injury at the time of his arrest, shortly after the police searched his work computer. *Id.* at 600, 601. However, we also stated that, even assuming that the discovery rule was applicable, "the latest a reasonable person would have discovered such a cause of action" was at the January 2012 hearing. *Id.* at 600.

Likewise, in the instant case, a reasonable person would have been on notice that a potential claim existed when he or she became aware during trial that the first responding officer had not filed a police report. Just as Mr. Hill could have read the grand jury records and conducted a further investigation, and just as Mr. Boudreau was aware of the software put on his computer and

could have conducted a further investigation, plaintiffs here were aware that information from the first responding officer had not been disclosed, but they took no further meaningful action.[6]

In conclusion, this Court declines to extend the discovery rule to tort claims such as those presented in this case; but, even if we did so, we are of the opinion that plaintiffs' claims would not be tolled pursuant to the discovery rule.

**B**

***Heck v. Humphrey*, 512 U.S. 477 (1994), and the Exoneration Rule**

The plaintiffs next aver that "[f]rom when Mr. Polanco was convicted through when his conviction was vacated, the Exoneration Rule prevented Plaintiffs-Appellants from bringing this claim, and the statute of limitations on negligence claims arising from his conviction were tolled." In so doing, they rely on the United States Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994). The plaintiffs contend that the "Exoneration Rule" provides that "plaintiffs who intend to bring civil suits * * * claiming that they were innocent of the crime of which they were convicted [must] first show not only that the conviction has been challenged in an appropriate proceeding, but that the challenge succeeded." Specifically, they claim that "Mr. Polanco needed to obtain post-conviction relief before suing because his civil action attacked his conviction" and,

---

[6]     The plaintiffs rely in their reply brief on this Court's opinion in *O'Sullivan v. Rhode Island Hospital*, 874 A.2d 179 (R.I. 2005). They contend that accrual of a claim does not happen until "a potential plaintiff knows of an injury, the wrongful conduct of the defendant, and a causal nexus between the two." In so representing, they rely on *O'Sullivan*. In our judgment, the *O'Sullivan* opinion is not applicable to the case before us. The Court in *O'Sullivan* was contending with how long the cause of action was tolled within the specific parameters of the discovery rule provided in the wrongful death statute—G.L. 1956 § 10-7-2. *O'Sullivan*, 874 A.2d at 183-89. In so doing, we specifically stated that "the exercise of reasonable diligence is not a prerequisite to *tolling* under § 10-7-2 in the same manner" as it is under the typical discovery rule as codified in § 9-1-14.1. *Id.* at 186 (emphasis in original). In the instant case, we are concerned with the applicability of our typical discovery rule, including the reasonable diligence standard. As such, we do not consider *O'Sullivan* to be pertinent, and we do not rely on it in analyzing the case before us.

because "Mr. Polanco and his family were legally unable to sue, the statute of limitations should be tolled during the period of conviction, or alternatively, the claim should not accrue until the date of exoneration."

The defendants aver that "the plaintiffs' choice to file this general negligence claim is not effected [*sic*] by the *Heck* precedent, and the 'exoneration rule' urged by the plaintiffs is neither appropriate in this case, nor would it help their cause."

In *Heck*, the United States Supreme Court was confronted with a civil suit filed pursuant to 42 U.S.C. § 1983[7] in federal court. *Heck*, 512 U.S. at 478. In that case, a man convicted of voluntary manslaughter (it is worth noting that the appeal of his criminal conviction was still pending when his civil suit was filed) was suing prosecutors and a police investigator for allegedly "engag[ing] in an unlawful, unreasonable, and arbitrary investigation leading to [his] arrest; knowingly destroy[ing] evidence which was exculpatory in nature and could have proved [his] innocence; and caus[ing] an illegal and unlawful voice identification procedure to be used at [his] trial." *Id.* at 478, 479 (internal quotation marks omitted). The Supreme Court equated the claims with which it was presented to the common law cause of action for malicious prosecution. *Id.* at 484. The Supreme Court ultimately held as follows:

> "We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, * * * a § 1983 plaintiff must prove that the

---

7       42 U.S.C. § 1983 provides, in pertinent part, as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus * * *." *Id.* at 486-87.

The Court then held that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487. Consequently, the Supreme Court explained the impact of its holding as follows:

> "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, * * * in the absence of some other bar to the suit." *Id.* (emphasis in original).

The plaintiffs contend that the principle set forth in *Heck* applies to their case; they purport that their civil case does challenge the validity of Mr. Polanco's conviction and that, therefore, their claims did not accrue until he was exonerated.

Subsequent to its decision in *Heck*, the United States Supreme Court issued an opinion in *Wallace v. Kato*, 549 U.S. 384 (2007), which served, in some respects, to clarify the holding in *Heck*. That case once again involved a civil suit filed in federal court pursuant to 42 U.S.C. § 1983; in *Wallace*, after the plaintiff's criminal conviction had been overturned, the civil suit at issue was commenced against the City of Chicago and several Chicago police officers for unlawful arrest. *Wallace*, 549 U.S. at 387. The issue before the Supreme Court was when the claim accrued for the purpose of determining whether or not the statute of limitations had run prior to the filing of the suit. *Id.* The Supreme Court first noted that "petitioner could have filed suit as soon as the allegedly wrongful arrest occurred * * * so the statute of limitations would normally commence to

run from that date." *Id.* at 388. The Supreme Court then went on to equate the claim before it to that of false imprisonment and stated that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends;" *i.e.*, when the defendant is held pursuant to legal process such as when "he is bound over by a magistrate or arraigned on charges." *Id.* at 389. The Supreme Court then noted that "[f]rom that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* at 390. The Court then distinguished the case from *Heck* and declined to apply the rule in *Heck* that the civil action does not accrue until the criminal conviction is invalidated on the grounds that, at the time the action in *Wallace* accrued, there was "no criminal conviction that the cause of action would impugn * * *." *Id.* at 393.[8] Therefore, the civil suit at issue did not imply the invalidity of the conviction in the related criminal action. The defendants in the present case contend that *Wallace*, rather than *Heck*, is the more analogous precedent to the scenario presented by the case presently before us.

This Court has dealt with the principles articulated in *Heck* and *Wallace* on three occasions. In *Laurence v. Sollitto*, 788 A.2d 455 (R.I. 2002), we applied *Heck* to the plaintiff's claims for money damages for an allegedly unconstitutional conviction filed pursuant to 42 U.S.C. § 1983. *Laurence*, 788 A.2d at 458-59. In *Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608 (R.I. 2007), we analyzed the malicious prosecution claim at issue as requiring proof that the criminal proceeding was terminated in the civil plaintiff's favor, although we did not cite *Heck* as support for that principle, but rather relied on a Rhode Island Supreme Court case which pre-

---

[8]     The United States Supreme Court has also addressed these issues in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). However, for the purposes of our resolution of the instant case, we see no need to delve into that case in detail. It suffices to state that that case also involved a claim made in federal court pursuant to 42 U.S.C. § 1983. *McDonough*, 139 S. Ct. at 2154.

dated *Heck.*[9]  *Hill*, 935 A.2d at 613.  In *Bainum v. Coventry Police Department*, 156 A.3d 418 (R.I. 2017), we relied on *Heck* and *Hill* in holding that, in the context of a malicious prosecution claim, the plaintiff had to demonstrate that the criminal proceeding at issue terminated in his or her favor.  *Bainum*, 156 A.3d at 421-22.

Unlike the situations presented in all of the just-discussed cases, we are not dealing with a claim pursuant to 42 U.S.C. § 1983, nor are we confronted in the instant case with an intentional claim such as one for malicious prosecution or for false imprisonment.  We are dealing with causes of action which sound in state law negligence.  Therefore, plaintiffs are asking us to extend the holding in *Heck* beyond its terms and the narrow circumstances in which we have heretofore applied it and to proceed to apply it to all state law claims, including those for negligence.  We decline to do so.[10]

---

[9]     The only instance in which this Court has relied on *Wallace v. Kato*, 549 U.S. 384 (2007), is in our opinion in *Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608 (R.I. 2007), in which we cited its holding that "the statute of limitations in a lawsuit seeking damages pursuant to 42 U.S.C. § 1983, arising from an alleged unlawful arrest, began to run when the legal process was initiated against the plaintiff" as being consistent with our holding with respect to the statute of limitations issue in that case.  *Hill*, 935 A.2d at 618.

[10]     In support of their arguments on appeal, plaintiffs also rely on the case of *Morin v. Aetna Casualty and Surety Co.*, 478 A.2d 964 (R.I. 1984), as illustrative of this Court promulgating a rule which, according to plaintiffs, would have proved "fatal to Plaintiffs' suit against these Defendants if brought before Mr. Polanco's conviction was vacated."  In our opinion, the *Morin* case is inapposite and not applicable to the case before us.  In *Morin*, the plaintiffs brought a civil action to recover damages from the defendant insurance company (and other defendants) for the damage caused by a fire and explosion at the plaintiffs' home.  *Morin*, 478 A.2d at 964.  However, the plaintiffs had been convicted of various criminal offenses in connection with the setting of the same fire.  *Id.* at 965.  We addressed the "issue of whether a criminal conviction is admissible to bar recovery in a civil suit based on the same facts or occurrence * * *."  *Id.*  We held that the criminal conviction was admissible, stating that "[t]o allow plaintiffs * * * to initiate a civil suit against the defendants in an attempt to collect the insurance proceeds for the damage caused by the fire while excluding the evidence of their convictions would afford plaintiffs the opportunity to reap the benefits of their crimes."  *Id.* at 966-67.  The present case has nothing to do with the admissibility of a criminal conviction in a civil case, nor is there any allegation that anyone

That being said, we note that plaintiffs represent in their brief as follows: "When ruling on common law negligence claims, most courts that have addressed the issue apply the Exoneration Rule where the injury is an allegedly erroneous conviction." This statement would seem to be inconsistent to our conclusion with respect to *Heck*. However, plaintiffs support their statement with a lengthy footnote containing numerous citations and, of the cases cited, all but one[11] deal with actions for attorney malpractice against criminal defense attorneys which sound in negligence. Indeed, many of the cases from other jurisdictions around the country relied upon by plaintiffs in the rest of their discussion of the applicability of *Heck* are attorney malpractice cases. After due reflection, those cases do not cause us to alter our conclusion in the instant case.

It is certainly true that many (but not all[12]) courts have required, as an element of attorney malpractice claims against criminal defense attorneys, that the plaintiff obtained relief from his or her conviction in some form. *See, e.g.*, *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003); *Adkins v. Dixon*, 482 S.E.2d 797, 801-02 (Va. 1997). However, many of those courts have done so independently of *Heck* and do not even cite to *Heck*. *See, e.g.*, *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496-98 (Tex. 1995). As defendants aver, this exoneration rule principle is at least arguably separate from *Heck* and has been confined to actions for attorney malpractice.[13] In any event, we are not confronted with a claim of attorney

---

involved attempted to benefit from their crimes. Thus, the reasoning in *Morin* simply is not applicable to the instant case.

[11] The one exception is *Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010), which extends *Heck v. Humphrey*, 512 U.S. 477 (1994), to a state law claim for an intentional tort—intentional infliction of emotional distress. *Parish*, 614 F.3d at 679-84.

[12] *See Rantz v. Kaufman*, 109 P.3d 132, 136, 137 (Colo. 2005).

[13] It is worth noting that, in *Laurence v. Sollitto*, 788 A.2d 455 (R.I. 2002), we discussed *Heck* and the principles expressed therein in the context of attorney malpractice, but we did not apply

malpractice in the instant matter, and we decline to apply the so-called exoneration rule in the context of this case.

Accordingly, *Heck* and the exoneration rule do not alter our conclusions in this case with respect to the accrual of the causes of action at issue and the running of the statute of limitations.

## C

### The Applicability of § 9-1-20

An additional theory of tolling which plaintiffs contend is applicable to their case is that of fraudulent concealment pursuant to the dictates of § 9-1-20.

Section 9-1-20 provides as follows:

> "If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."

The plaintiffs contend that, "[b]ecause Officer Camardo made actual misrepresentations that concealed his egregious negligence, G.L. 1956 § 9-1-20 delayed accrual of this claim." The misrepresentation on which plaintiffs rely is the fact that, at his deposition, the detective who conducted the investigation of the assault at issue, according to plaintiffs, testified that Officer Camardo "told him that nobody reported an assault to Officer Camardo that night." The plaintiffs further aver that "[s]ection 9-1-20 applies when the misrepresentations were made to someone other than the plaintiff."

---

*Heck* nor did we clearly apply any similar exoneration rule principle in that case. *Laurence*, 788 A.2d at 459, 460.

On the other hand, defendants aver that "plaintiffs' assertion lacks a legitimate factual basis, has no support in the law and does not comport with the policy behind the adoption of § 9-1-20, and should be rejected."

We have stated that "[p]ursuant to the provisions of § 9-1-20, if a potential defendant fraudulently conceals a cause of action from a potential plaintiff, the statute of limitations is tolled until such time as the plaintiff discovers the existence of a cause of action." *Boudreau*, 212 A.3d at 601 (internal quotation marks omitted). In order to prove that fraudulent concealment has taken place, "it is a plaintiff's burden to show (1) that the defendant made an actual misrepresentation of fact; and (2) that, in making such misrepresentation, the defendant fraudulently concealed the existence of the plaintiff's causes of action." *Id.* (internal quotation marks omitted). Accordingly, the plaintiff must "demonstrate that the defendant made an express representation or engaged in other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him or her to rely thereon to his or her disadvantage." *Id.* at 601-02 (internal quotation marks omitted). Of particular importance is the fact that we have also stated that "mere silence or inaction on the part of the defendant does not constitute actual misrepresentation in this context." *Id.* at 602 (internal quotation marks omitted); *see Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 182 (R.I. 2008); *see also Smith v. O'Connell*, 997 F. Supp. 226, 238 (D.R.I. 1998), *aff'd sub nom. Kelly v. Marcantonio*, 187 F.3d 192, 200 (1st Cir. 1999).

Thus, it ineluctably follows that failure to file a police report cannot amount to fraudulent concealment. Fraudulent concealment requires an actual misrepresentation which is more than mere silence or inaction. *See Boudreau*, 212 A.3d at 601-02. Officer Camardo's act of not filing a police report certainly does not meet that requirement.

However, plaintiffs point to an alleged misrepresentation that they aver was made by Officer Camardo to the detective who ultimately investigated the assault. In determining the applicability of § 9-1-20, we thus must look to the specific language in the deposition testimony to which plaintiffs point us.

The deposition of the detective who conducted the investigation of the assault at issue contains the following exchange:

> "**Q And what did he say** [with respect to the placement of the weapon at the scene]**?**
>
> "A I think his response was, yeah, I didn't see any pool stick. There was nobody there. I thought the kid just, you know, I thought he just maybe overdosed or fell down drunk.
>
> "* * *
>
> "**Q Did he say whether he had talked to any witnesses at the scene?**
>
> "A No.
>
> "**Q Okay.**
>
> "A No. I think --
>
> "**Q Did you ask him?**
>
> "A I didn't really have to ask him. I think he was just kind of just, you know, you know, kind of just went on and said, you know, I didn't know. I didn't know how he got there. I thought he may have fallen down drunk or he may have overdosed. I said, did you see a pool stick in the area or anything like that around him, and he said, no, I didn't see anything. I don't remember it. I don't recall if he said there was any witnesses. I don't. I mean, obviously, there was witnesses at that point. I think he would have told me that he spoke to somebody and they told him, they seen him stumble and fall down drunk.
>
> "**Q But you don't recall asking him?**

> "A No, I don't recall. I don't recall all the details of that. I know the
> gist of the conversation was me looking and inquiring about the pool
> stick and him saying that he didn't know how. He thought it was, I
> believe he said he thought he was either drunk, like I had said, or
> overdosed."

The parties debate whether or not, for the purposes of fraudulent concealment, an actual misrepresentation must be made directly to the plaintiff or can be made to a third party. We need not address that issue, because, in our opinion, the just-cited deposition testimony does not reflect that any actual misrepresentation was made with respect to the existence of witnesses or with respect to Officer Camardo having interviewed witnesses on the night in question. The closest the deponent came to stating that Officer Camardo told him there were no witnesses is when he stated that Officer Camardo told him, "There was nobody there." However, the deponent then very clearly went on to specifically state that he did not recall if Officer Camardo said there were any witnesses.

Accordingly, the deposition testimony pointed to by plaintiffs simply does not rise to the level of an actual misrepresentation, which is a necessary element to prove fraudulent concealment.[14] As such, we conclude that the statute of limitations in this case is not tolled pursuant to § 9-1-20.

---

[14] We pause to briefly note two additional issues presented by the parties with respect to the applicability of fraudulent concealment. The defendants contend that plaintiffs waived any argument with respect to the deposition testimony of the investigating detective by not raising it below. After reviewing the filings in Superior Court with respect to the motion for summary judgment, it is clear that plaintiffs did mention and cite to that deposition testimony at least twice below. What is more, given that it so clearly does not amount to an actual misrepresentation, we need not delve any deeper into the waiver argument.

The plaintiffs also contend that a factual determination must be made as to whether Officer Camardo took statements from Ms. Morales and Mr. Collazo and "never told anyone about them," in order to know whether or not he lied about the statements. They aver that, if it is found that Officer Camardo lied about taking those statements, it would delay accrual of the claim under § 9-1-20. We simply cannot agree. Even assuming he did take the statements and failed to disclose them, he still did not engage in an actual misrepresentation which amounted to more than mere

## D

## Equitable Tolling

Finally, plaintiffs contend that equitable tolling should be applied in this case because "[t]his unusual situation exemplifies the need for courts to exercise their equitable powers to fashion remedies to patch holes in the law." They further aver that defendants "can point to no facts that a 'better' investigation could have uncovered" in this case.

The defendants posit that equitable tolling should not be applied to this case because "plaintiffs try to excuse away the fact that they did not seek to investigate their claims at all during the period between the conviction and when the new witnesses volunteered to come forward." They add that, accordingly, there were not "diligent efforts" nor was "reasonable diligence * * * exercised." They point out that Mr. Polanco was aware of his injury and the breach at the time of his trial.

Upon reflection and after a thorough review of the record, we are in agreement with defendants. "This Court has observed that 'equitable tolling is an exception to the general statute of limitations based upon principles of equity and fairness * * *.'" *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1279 (R.I. 2017) (quoting *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002)). Black's Law Dictionary defines "equitable tolling," in pertinent part, as follows:

> "The doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired, in which case the statute is suspended or tolled until the plaintiff discovers the injury[;] [a] court's discretionary extension of a legal deadline as a result of extraordinary circumstances that prevented one from complying

---

silence or inaction as is required for fraudulent concealment to toll the statute of limitations. *See Boudreau*, 212 A.3d at 601-02.

despite reasonable diligence throughout the period before the deadline passed." Black's Law Dictionary 680 (11th ed. 2019).

Thus, it is clear that a prerequisite to this Court's extension of the statute of limitations based on equitable tolling is either a plaintiff who was not able to discover his or her injury despite diligent efforts or extraordinary circumstances that prevented a plaintiff from complying with the deadline despite using reasonable diligence. The first is certainly inapplicable to this case since it is clear plaintiffs knew of their injury at the time of Mr. Polanco's arraignment.

The second requires the exercise of reasonable diligence on the part of the plaintiffs. As is reflected in our discovery rule analysis, we are simply not convinced that such reasonably diligent efforts were undertaken in this case, nor can we agree that, as plaintiffs aver, defendants must point to facts that a better investigation would have uncovered. When plaintiffs learned at Mr. Polanco's trial that Officer Camardo did not file a police report despite being the first officer on the scene, there was enough to put a reasonable person on notice that a further investigation was necessary; it was not reasonable to fail to pursue the issue by attempting to get further information from Officer Camardo (or from another source). However, it is clear from the record that Officer Camardo was not even interviewed prior to or during the trial. It is also clear that nothing prevented plaintiffs from engaging in such an investigation. Thus, these simply are not the type of unusual or extraordinary circumstances which warrant application of the doctrine of equitable tolling. *See Rivera v. Employees' Retirement System of Rhode Island*, 70 A.3d 905, 914 (R.I. 2013) (applying the doctrine of equitable tolling and noting the "unusual" nature of the case).[15]

---

[15] The defendants contend that the case of *Wallace*, 549 U.S. at 384, stands for the proposition that "equitable tolling is not appropriate in claims against police officers by former criminal defendants." The plaintiffs aver, in response, that *Wallace* is distinguishable from the instant case, arguing that comparing the two is "like comparing apples and oranges * * *." Given our above-conclusion with respect to equitable tolling based on the definition of that doctrine, we need not wade into this particular debate. *See Grady v. Narragansett Electric, Co.*, 962 A.2d 34, 42 n.4

- 26 -

In conclusion, plaintiffs' claims accrued at the time that Mr. Polanco was arraigned and were not tolled by the discovery rule, the holding in *Heck*, the exoneration rule, § 9-1-20, or the doctrine of equitable tolling. Consequently, this suit was filed after the three-year statute of limitations had run and is time-barred.

## IV

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.


**Justice Flaherty, dissenting.** I find myself in agreement with my colleagues in the majority with respect to their conclusion that this is not an appropriate case for the discovery rule, that the so-called "exoneration rule" should not be applied to the facts of this case, and that G.L. 1956 § 9-1-20 is similarly unavailable to this plaintiff.[1] Where I part company with the majority, however, is in its opinion that the principles of equitable tolling should not toll the statute of limitations in this case and allow the plaintiff to litigate his cause.[2] Because it is my strongly held belief that, in this highly unusual case, equity demands that the statute of limitations be tolled, I feel compelled to respectfully dissent.

---

(R.I. 2009) (noting "our usual policy of not opining with respect to issues about which we need not opine").

[1] Throughout this dissent, for purposes of simplicity, I write as if there were only one plaintiff in the case. I acknowledge that Mr. Polanco's family members have derivative claims, and my analysis is the same for those claims—that the statute of limitations should not bar them due to the circumstances of this case.

[2] I also observe that the summary-judgment motion regarding the statute of limitations was the second such motion made by the defendants in this case, plaintiff having already escaped summary judgment after a trial justice considered plaintiff's public-duty argument.

Mr. Polanco was accused of assaulting a bar patron with a pool cue and inflicting serious bodily harm. It is undisputed that the responding police officer filed no report.[3] The responding officer, Camardo, has never wavered from his position that he did not speak to anyone on the night in question who gave him any statement or provided him with any description about who the culprit may have been. However, there were two witnesses, each of whom claimed that they had in fact spoken to the responding officer and further had provided a description of the assailant. Clearly, that description was not of Mr. Polanco, who was known to each of the witnesses.

On the other hand, a later investigating officer spoke to a cook who was working on the night of the incident and to the club owner. One of those individuals identified Mr. Polanco from a photograph, but the other was unable to do so when shown a photopack. Ironically, at trial, the witness who had identified Mr. Polanco from his photograph recanted. The other witness, who could not pick Mr. Polanco from a photographic lineup shortly after the incident, remarkably was able to positively identify him in court some three years later. As is set forth in the majority opinion, Mr. Polanco was convicted and sentenced to a substantial prison sentence, a good portion of which he served.

When one of the witnesses who had given a description of the assailant to the responding officer returned to Rhode Island from Puerto Rico, she inquired about the condition of the victim. In that conversation, she was stunned to learn that Mr. Polanco had been convicted of the assault and that he was incarcerated. This witness then contacted her son-in-law, who had been with her on the evening of the assault and who had also given a statement to the responding officer; he too was unaware and discomfited to hear that Mr. Polanco had been incarcerated. This disturbing

---

[3] Further, there was deposition testimony by an investigating detective that Camardo had informed him that someone on the scene was on the ground as a result of an overindulgence in drugs or alcohol, but that Camardo did not indicate to the detective that there had been an assault.

news prompted the witnesses to go to the Providence police with their story. When they failed to achieve any satisfaction from the police, they related their concerns to the Office of the Attorney General. In that regard, the witnesses did more than merely share their recollections. Both witnesses swore in affidavits that they had seen the incident and had provided the responding officer with a description as well as with their contact information. Further, each swore that Mr. Polanco was not the assailant.

Mr. Polanco soon filed a motion for post-conviction relief based on newly discovered evidence. The motion came on for hearing before the same justice who had presided over the trial. After listening to all the testimony, the trial justice found Mr. Polanco's witnesses to be credible, and she determined that a new trial was warranted.

The comments that the trial justice made when she granted the new trial are striking to me. She said: "There is no way [defense counsel] could have known about [the two exculpatory witnesses]" and she also said that the evidence was "newly discovered since the trial and was not previously discoverable[.]" Moreover, after the trial justice's ruling, the state dismissed the case against Mr. Polanco pursuant to Rule 48 of the Superior Court Rules of Criminal Procedure. The state said:

> "After reviewing the Newly Discovered Evidence presented at the recent hearing, in addition to the evidence presented at the original trial, the State has determined that the case cannot be proven by evidence to satisfy the burden of proof beyond a reasonable doubt, and therefore, in the interest of justice, moves to dismiss the case at this time."

This statement is also striking. It is the trial justice's findings with respect to the evidence being unknowable and newly discovered, however, that are particularly troublesome with regard to the majority's equitable tolling analysis. Although those factual findings are not binding in this case as either *res judicata* or collateral estoppel, they nonetheless should have been taken into

consideration by the majority in its assessment as to whether Mr. Polanco's civil case should be equitably tolled.[4] However, those bold and important comments did not find their way into the majority opinion.

Aside from that omission from the majority's opinion, the independent question remains whether this case merits tolling the statute of limitations under equitable principles. As the majority correctly points out, "equitable tolling is an exception to the general statute of limitations based upon principles of equity and fairness[.]" *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1279 (R.I. 2017) (quoting *Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002)). Equitable tolling includes "[a] court's discretionary extension of a legal deadline as a result of extraordinary circumstances that prevented one from complying despite reasonable diligence throughout the period before the deadline passed." Black's Law Dictionary 680 (11th ed. 2019).

The fact that Mr. Polanco was convicted primarily on the account of one eyewitness's testimony, when that eyewitness had previously been unable to positively identify Mr. Polanco, is important.[5] It is also important that two eyewitnesses came forward and attested to having given

---

[4] It is noteworthy that the standard a trial justice employs when ruling on a motion for a new trial made on grounds of newly discovered evidence includes that the evidence was "not discoverable prior to trial with the exercise of due diligence[.]" *State v. Woods*, 936 A.2d 195, 197 (R.I. 2007) (quoting *State v. Firth*, 708 A.2d 526, 532 (R.I. 1998)). Similarly, and as discussed in both the majority opinion and in this dissenting opinion, equitable tolling generally requires reasonable diligence by the claimant.

[5] Indeed, "[m]any studies of exonerations find that erroneous eyewitness identifications play a part in over 75% of all wrongful convictions." Sandra Guerra Thompson, Judicial Blindness to Eyewitness Misidentification, 93 Marq. L. Rev. 639, 639 (2009). The Innocence Project, an organization that advocates for criminal justice reform and helps to exonerate those that have been wrongly convicted through the utilization of DNA testing, states that of the 360 wrongful convictions that were overturned in the United States via "post-conviction DNA evidence[,]" mistaken eyewitness identifications played a part in roughly 70 percent of those wrongful convictions. Innocence Project, http://innocenceproject.org/eyewitness-identification-reform/ (last visited June 12, 2020).

a description of the attacker to the responding officer, and that that information never made its way to Mr. Polanco until after he had been incarcerated for over two years. Combine this with the trial justice's finding that the evidence was undiscoverable and consequently vacating his conviction, along with the state's admission that the criminal case must be dismissed "in the interest of justice[,]" and the facts certainly reveal that this case is extraordinary. The only issue, then, appears to be whether Mr. Polanco exercised reasonable diligence throughout the statutory period.

The majority spends much of its equitable tolling analysis chastising Mr. Polanco for failing to exercise such diligence. The majority asserts that, from the moment of trial, when Mr. Polanco learned that the responding officer failed to file a police report, he should have been on sufficient notice to begin investigating his claim. Nevertheless, in my opinion, the mere fact that Mr. Polanco knew that an officer did not file a report does not lead to a conclusion that there were unidentified witnesses. As the trial justice said, that information was unknowable. For all Mr. Polanco knew, or could have known, he was merely the victim of a faulty eyewitness identification and as a result he ultimately was convicted beyond a reasonable doubt.

After Mr. Polanco was convicted and incarcerated, and having limited resources, he could have had no knowledge of the exculpatory witnesses that he alleges officer Camardo failed to disclose. Against these odds, and given the particularities of this case, it would have been unreasonable to expect Mr. Polanco to do as the majority opinion seems to suggest: (a) conduct an independent investigation from within his prison cell; or (b) file suit naming a series of John Doe defendants claiming that police negligence had resulted in his wrongful conviction.[6] In any event,

---

[6] What is or is not reasonable diligence must be measured against the circumstances in which a particular plaintiff finds himself. *See Johnson v. Newport County Chapter for Retarded Citizens, Inc.*, 799 A.2d 289, 292 (R.I. 2002) (holding that "equitable tolling is * * * available to litigants who suffer from debilitating mental incapacity").

I would not hold Mr. Polanco to exercise reasonable diligence in investigating a claim if doing so is, in and of itself, unreasonable.

This is an extraordinary case. If equity is to mean anything at all, its principles should be applicable in circumstances such as these. For these reasons, I respectfully dissent from the holding of the majority in this case.

---

Moreover, the majority fails to acknowledge the deluge of cases it invites from those currently serving sentences. It is my opinion that it is far more reasonable to expect those who may feel they have been wrongfully convicted to wait until their convictions have been vacated to file a civil suit, if it is warranted, and to toll the statutory period when and if extraordinary circumstances and reasonable behavior are present.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Dionisio Polanco et al. v. James J. Lombardi, III, in his capacity as Treasurer of the City of Providence, et al. |
| **Case Number** | No. 2018-198-Appeal.<br>No. 2018-199-Appeal.<br>No. 2018-200-Appeal.<br>No. 2018-201-Appeal.<br>No. 2018-202-Appeal.<br>No. 2018-203-Appeal.<br>No. 2018-204-Appeal.<br>(PC 12-1844) |
| **Date Opinion Filed** | June 29, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Melissa A. Long |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Max Wistow, Esq.<br>Kenneth J. Sylvia, Esq. |
| | For Defendants:<br><br>Michael B. Forte, Jr., Esq.<br>Kevin F. McHugh, Esq.<br>Michael Colucci, Esq.<br>Steven B. Nelson, Esq. |